**Billie M. IRELAND, Plaintiff–Appellant,**

v.

**Gary L. TUNIS, Richard Thompson, John Meiers, and Richard D. Kuhn, Defendants–Appellees.**

Nos. 95–2244, 95–2333.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1997.

Decided May 15, 1997

Rehearing and Suggestion for Rehearing En Banc Denied June 26, 1997.

Frank D. Eaman (argued and briefed), Bellance, Beattie, Harper Woods, MI, for Plaintiff–Appellant.

Robert G. Kamenec (briefed), Jeffrey C. Gerish (argued), Plunkett & Cooney, Detroit, MI, for Defendants–Appellees Gary L. Tunis, Richard Thompson, John Meiers.

Craig M. Weber (argued), George A. Googasian (briefed), The Googasian Firm, Bloomfield Hills, MI, for Defendant–Appellee Richard Kuhn.

Before: MARTIN, Chief Judge; NORRIS and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

This appeal addresses the precise scope of immunity from civil suit afforded to a state court judge, county prosecutors, and an investigator employed by the prosecutor's office for their roles in seeking and issuing an arrest warrant. Plaintiff–Appellant Billie M. Ireland, Mayor of the City of Rochester Hills, Michigan, sued defendants, an Oakland County Circuit Court Judge, two Oakland County prosecutors, and a criminal investigator in the prosecutor's office, under 42 U.S.C. § 1983. Ireland claims that defendants violated her Fourth and Fourteenth Amendment rights when they filed a criminal complaint against her, sought and issued a warrant for her arrest in connection with alleged improprieties in the City's direct payments to a County police officer. The district court granted summary judgment for all defendants on the basis of absolute and qualified immunity. Ireland appeals the entry of summary judgment for defendants and the denial of her motions for summary judgment and to compel discovery. For the reasons that follow, we affirm.

## I. BACKGROUND

Billie M. Ireland, Mayor of the City of Rochester Hills, Michigan, brought this 42 U.S.C. § 1983 action against four Oakland County officials: Richard D. Kuhn, Oakland County Circuit Court Judge; Richard Thompson, Prosecuting Attorney for the County; Gary L. Tunis, Assistant Prosecuting Attorney; and John Meiers, a criminal investigator with the prosecutor's office. Ireland alleges violations of her Fourth and Fourteenth Amendment rights insofar as she asserts that the warrant for her arrest, sought and issued by defendants, lacked probable cause to arrest and was not issued by a proper magistrate judge after a judicial proceeding. First Amend. Compl.; J.A. at 21–27.

On October 5, 1993, Oakland County Circuit Court Judge Kuhn, then acting as Chief Judge, issued a warrant for Ireland's arrest based on allegations made in a criminal complaint that Ireland had participated in a scheme to misappropriate public funds, stemming from payments made by the City of Rochester Hills to Captain Gerard Carlin, a county law enforcement officer assigned to the Rochester Hills substation of the Oakland County Sheriff's Department. Crim. Compl.; J.A. at 120–125.

Pursuant to a contractual arrangement, Oakland County provided law enforcement services to the City of Rochester Hills. *See* Agreement for Law Enforcement Servs.; J.A. at 369. The City paid the County for the overall provision of police services, and the County in turn compensated the individual officers rendering such services. The contract stated that the City would not be required to assume any liability for direct compensation to any County personnel, but apparently it did not forbid such direct payments. According to the contract, services beyond the scope of the contract were "available upon request by the local jurisdiction to be paid for at the established overtime rate." Agreement ¶ 4; J.A. at 370.

Carlin was appointed Captain of the Rochester Hills substation, a newly-created position, in January 1991. As Captain, he became ineligible for overtime pay according to Sheriff's Department rules. *See* Sheriff Nichols Deposition at 117; J.A. at 1475. Ireland alleges that her administrative assistant, Doris Keylon, obtained specific approval from a Sheriff's Department official, Dale Cunningham, for the City to make payments directly to Carlin, and that "Mr. Cunningham knew very well what was going on." Ireland

Deposition (Part II) at 106, 157–58; J.A. at 1262, 1313–14; *see also* Keylon Interview; J.A. at 683–84. In January 1991, the City began compensating Carlin for overtime services. In the ensuing two-year period, the City paid Carlin over $20,000. Ireland Deposition (Part 1) at 205–06; J.A. at 972–73.

In December 1992, after receiving an anonymous letter, the Sheriff's Department commenced an internal investigation of the City's payments to Carlin. Nichols Deposition at 49, 77; J.A. at 1458, 1465. Soon thereafter, the sheriff turned the investigation over to the Oakland County Prosecutor's Office, which subsequently decided to file criminal charges against Ireland, Carlin, and others. Thompson Deposition at 32–34; J.A. at 1533–34. With Thompson's approval, Tunis prepared an arrest warrant and a criminal complaint charging Ireland, Carlin, and Keylon with violating various state laws.[1] Tunis Deposition at 17, 33; J.A. at 1569, 1573. On October 5, 1993, Tunis and Meiers presented the materials to Judge Kuhn in his chambers. Tunis Deposition at 59; J.A. at 1580. Meiers, who had assisted in the investigation, signed the complaint as the complaining witness. *Id.* Ireland alleges that no formal hearing was held, and that the complaint was not sworn to under oath. Judge Kuhn, however, testified at his deposition that he read the complaint, swore in the complainant, verified "that this was a true Complaint and what was in there was true," found probable cause on the basis of the complaint alone, and issued a warrant for Ireland's arrest. Kuhn Deposition at 18–20; J.A. at 148–50. No record was made of the proceeding.[2] At their depositions, Tunis and Meiers testified in support of the judge's version of events. *See* Meiers Deposition at 127, 130, 143–44; J.A. at 1427–28, 1431; Tunis Deposition at 56, 59; J.A. at 1579–80.

Ireland and her co-defendants moved in state court to quash the arrest warrants. In response, Michigan District Court Judge Nelson issued an opinion finding that the procedure used to obtain the warrant violated the Fourth Amendment insofar as the complaints contained only legal conclusions without sufficient factual allegations to support such conclusions. Judge Nelson Opinion; J.A. at 211–215. To remedy the violation, Judge Nelson suppressed any evidence resulting from the arrests, but, recognizing the inherent safeguard of a preliminary examination, refused to dismiss the charges at that time. Judge Nelson Opinion; J.A. at 214. Following a preliminary examination, Judge Nelson dismissed all charges against Ireland for want of probable cause, a decision the prosecutors chose not to appeal.[3] *See* Tr.

---

1. Specifically, as recounted by the United States district court:

 The complaint included eight counts; counts one through six applied to [Ireland], Carlin, and Doris Keylon, while counts seven and eight named only Carlin. Count one alleged a conspiracy by public officials to embezzle over $50. Count two alleged a conspiracy to commit the common-law offense of "misconduct in public office" through payment of city funds to Carlin. Count three alleged a conspiracy to use public funds for a purpose contrary to law. Counts four through six charged each individual with the offenses underlying the conspiracy charges in counts one through three. Finally, count seven charged Carlin with receipt of stolen property in excess of $100, and count eight charged Carlin with receiving additional compensation for duties for which he was already being paid by the Sheriff's Department. Counts two and five included fairly lengthy (and nearly identical) statements of facts, and count eight alleged that Carlin received additional compensation from the City of Rochester Hills. The remaining counts included essentially no supporting facts; rather, they stated the relevant provisions of the laws that allegedly were violated.
 *Ireland v. Tunis,* 907 F.Supp. 1088, 1091 n. 1 (E.D.Mich.1995).

2. Ireland asserts that the issuance of an arrest warrant must take place on the record in the presence of a court reporter. We have reviewed the formal requirements for the issuance of an arrest warrant in Michigan, *see* MICH. COURT RULE 6.102; MICH. COMP. LAWS ANN. §§ 764.1–.1d, and find no such mandate. We note that had Judge Kuhn relied upon the "testimony of a sworn witness" in making his probable cause determination, that testimony would have to have been "adequately preserved to permit review." *See* MICH. COURT RULE 6.102(B).

3. Judge Nelson likewise dismissed all charges against Keylon and most charges against Carlin. *See* Tr. of Prelim. Exam. at 40–42; J.A. at 255–57. For the sole remaining charge, Count Eight—retaining fees in violation of MICH. COMP. LAWS ANN. § 45.408 (West 1996), Carlin was tried and acquitted by a jury.

of Prelim. Exam. at 42; J.A. at 257; Thompson Deposition at 73; J.A. at 1543.

Ireland subsequently commenced the instant civil action, contending that the criminal complaint against her insufficiently stated a violation of any Michigan criminal law; that the warrant for her arrest was not obtained in a proper judicial proceeding because the complaint was not sworn to under oath and failed to establish probable cause, and because Judge Kuhn lacked authority under Michigan law to issue arrest warrants; and that her arrest was attributable to "impure and malicious" political motives of the prosecutors. First Amend. Compl.; J.A. at 23–25.

In two detailed and well-reasoned opinions, the United States district court granted summary judgment to all defendants. First, the district court found Judge Kuhn absolutely immune from Ireland's suit. *Ireland v. Tunis,* 893 F.Supp. 724 (E.D.Mich.1995). Without deciding the "seemingly basic" but apparently unsettled question of whether judges of Michigan's circuit courts maintain authority under Michigan law to issue arrest warrants, the district court found that, even if Judge Kuhn did act in excess of his authority when he issued the warrant for Ireland's arrest, he did not act in the clear absence of all jurisdiction. *Id.* at 729, 730. Based on Michigan's jurisdictional framework, Judge Kuhn's belief that he had authority to issue arrest warrants was reasonable. *Id.* at 730.

In a subsequent opinion, the United States district court granted summary judgment to the remaining defendants. *Ireland v. Tunis,* 907 F.Supp. 1088 (E.D.Mich.1995). The court found that Prosecutors Thompson and Tunis were absolutely immune from Ireland's § 1983 suit for deciding to seek and for obtaining an arrest warrant, acts directly related to initiating prosecution. *Id.* at 1100. Meiers, however, performed only investigatory duties that were not protected by absolute immunity. *Id.* Nonetheless, the district court found that Meiers was entitled to qualified immunity for his participation in the procurement of Ireland's arrest warrant because his actions were objectively reasonable and violated no clearly established law. *Id.* at 1102, 1106. Ireland timely appealed.

## II. DISCUSSION

### A. Standard of Review

■ We review a district court's grant of summary judgment de novo, making all reasonable inferences in favor of the nonmoving party to determine if a genuine issue of material fact exists. *Pusey v. City of Youngstown,* 11 F.3d 652, 655 (6th Cir.1993) (quotation omitted), *cert. denied,* 512 U.S. 1237, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994). "Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law." *Id.*

### B. Absolute Judicial Immunity

■ Ireland argues that the broad shield of absolute judicial immunity does not protect Judge Kuhn from liability for issuing the warrant for her arrest. Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits. *Mireles v. Waco,* 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); *Barnes v. Winchell,* 105 F.3d 1111, 1115 (6th Cir.1997). Such far-reaching protection "is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" *Barnes,* 105 F.3d at 1115 (quoting *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993)). Accordingly, absolute judicial immunity is overcome only in two situations:

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles,* 502 U.S. at 11–12, 112 S.Ct. at 288 (citations omitted); *see also Barnes,* 105 F.3d at 1116 (same).

■ Whether an action is judicial depends on the "'nature' and 'function' of the act, not the 'act itself.'" *Mireles,* 502 U.S. at 13, 112 S.Ct. at 288 (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 1107,

55 L.Ed.2d 331 (1978)). This functional analysis typically turns on two factors set forth by the Supreme Court in *Stump*. First, looking to the nature of the act, courts must determine "whether it is a function normally performed by a judge." *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107. For this inquiry, rather than rigidly scrutinizing only the particular act in question, courts should "look to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 13, 112 S.Ct. at 288. Second, regarding the expectations of the parties, courts must assess whether the parties dealt with the judge in his or her judicial capacity. *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107–08.

■ Here, both factors indicate that Judge Kuhn's issuance of the arrest warrant was a judicial act. This court has already recognized that the issuance of an arrest warrant is a judicial act for judicial immunity purposes. *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir.1988); *King v. Love*, 766 F.2d 962, 968 (6th Cir.) (although setting bond on an arrest warrant is a judicial act, the act of deliberately misleading the police officer who was to execute the warrant about the identity of the person sought was nonjudicial), *cert. denied*, 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985); *cf. Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991) ("[T]he issuance of a search warrant is unquestionably a judicial act."). Thus, the judicial nature of the act of issuing an arrest warrant cannot seriously be challenged.

■ We next consider Ireland's primary contention, that Judge Kuhn acted in complete absence of all jurisdiction and therefore is not immune from § 1983 liability. *See Mireles*, 502 U.S. at 12, 112 S.Ct. at 287–88. With respect to this jurisdictional inquiry, the Supreme Court has instructed that:

> [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

*Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1105 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)) (footnote omitted). If the matter upon which the judge acts is clearly outside the subject matter jurisdiction of the court over which the judge presides, the act is done in the clear absence of all jurisdiction. *King*, 766 F.2d at 965; *see Barnes*, 105 F.3d at 1122 ("Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes."). By contrast, merely acting in excess of authority does not preclude immunity. *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir.1984). For example, a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in excess of jurisdiction, whereas a probate court judge would not be immune for trying a criminal case, an act for which the probate judge clearly lacked all subject matter jurisdiction. *Stump*, 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7. As developed below, the present case, involving allegations that a judge of a court of general jurisdiction improperly issued an arrest warrant, more closely resembles the former scenario for which absolute immunity is mandated under governing precedent.

■ Michigan circuit courts are courts of general jurisdiction possessing original jurisdiction in all matters not prohibited by law. MICH. CONST. art. VI, §§ 1,13; MICH. COMP. LAWS ANN. §§ 600.151, 600.601, 600.605 (West 1996); *People v. Johnson*, 427 Mich. 98, 398 N.W.2d 219, 222 n. 7 (1986). "Circuit courts are therefore presumed to have jurisdiction unless the matter in question is specifically excluded by law." *People v. Loukas*, 104 Mich.App. 204, 304 N.W.2d 532, 534 (1981).

■ We find no law that specifically proscribes the jurisdiction of a Michigan circuit court as to the issuance of arrest warrants. As codified in § 600.8511(b), Michigan law grants specific authority for a district court magistrate judge to issue arrest warrants. *See* MICH. COMP. LAWS ANN. § 600.8511(b) (West Supp.1996). Nowhere, however, does this statute or any other imply that such authority lies exclusively with a magistrate judge. Presuming the contrary, the defini-

tion of a "magistrate" found in the Michigan Code of Criminal Procedure contains language relevant to our inquiry:

> This definition does not limit the power of a justice of the supreme court, a *circuit judge*, or a judge of a court of record having jurisdiction of criminal cases under this act, or deprive him or her of *the power to exercise, in his or her discretion, the authority of a magistrate.*

MICH. COMP. LAWS ANN. § 761.1(f) (West Supp.1996) (emphases added). We recognize that this definitional statute cannot serve to confer jurisdiction on any court, should such specific grant of authority be necessary under Michigan's jurisdictional framework. Nonetheless, we believe the statutory language plainly implies that, at least with respect to criminal cases, circuit judges have discretion to do that which a magistrate judge is empowered to do, including the authority to issue arrest warrants.

Ireland contends that a decision of the Court of Appeals of Michigan, *People v. Farmilo*, 137 Mich.App. 378, 358 N.W.2d 350 (1984), conclusively demonstrates that Michigan circuit judges lack the discretionary power to entertain requests for arrest warrants because such warrants are required to issue at the district level. In *Farmilo*, an Oakland County Prosecutor requested that an Oakland County Circuit Judge issue an arrest warrant. The judge declined, believing that jurisdiction rested with the district court. The Court of Appeals of Michigan affirmed in a four-paragraph per curiam opinion, noting simply that district court magistrate judges are vested with jurisdiction to issue arrest warrants under § 600.8511(b), and that circuit courts ordinarily acquire jurisdiction in a criminal matter only after the case is bound over for trial by a district court. *Id.* 358 N.W.2d at 351.

We agree with the United States district court's conclusion that *Farmilo* should not be read as prohibiting a Michigan state circuit judge from issuing an arrest warrant. The issue in *Farmilo* concerned whether a circuit judge was *required* to issue an arrest warrant when requested to do so, and the Court of Appeals of Michigan upheld the judge's refusal to entertain the warrant request. Thus, the clear implication of *Farmilo*'s holding is that a circuit judge has discretion with respect to issuing, or not issuing, an arrest warrant, a position entirely consistent with § 761.1(f)'s recognition that a Michigan circuit judge has discretion to exercise the authority of a magistrate judge.

In this case, Judge Kuhn testified that chief judges of the Oakland County Circuit Court have a longstanding practice, going back at least twenty years, of issuing arrest warrants in special circumstances, such as when a politically sensitive matter is involved, when district judges are not available, or when crimes cross jurisdictions. Kuhn Deposition at 7–10; J.A. at 137–40. In particular, Judge Kuhn recalled that as Chief Judge he had issued many warrants, including an arrest warrant for the Vice Mayor of the City of Pontiac, J.A. at 135, and he knew of at least two chief judges before him who had similarly issued arrest warrants. J.A. at 138. Ireland presents no evidence to refute this asserted custom. Thus, uncontroverted evidence, albeit self-serving,[4] indicates that the Chief Judge of the Oakland County Circuit Court traditionally issues arrest warrants in certain situations. Judge Kuhn, therefore, was not confronted with a request that was foreign to his office.

We are thus presented with a scenario where Michigan state circuit judges enjoy broad general jurisdiction limited only by specific exclusion at law; no law prohibits a circuit judge from issuing arrest warrants, rather the Michigan legislature impliedly recognizes that circuit judges have discretion to act as a magistrate judge and issue arrest warrants; the only case law on point merely confirms that circuit judges are not required to issue arrest warrants; and the defendant

---

**4.** Beyond the judge's self-serving testimony, we have found further support for the existence of this tradition. *See infra* Part II.C n. 5 (discussing *Joseph v. Patterson*, 795 F.2d 549 (6th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987), where an Oakland County Circuit Judge had issued the arrest warrants at issue); Tunis Deposition at 50–52; J.A. at 1578 (testifying that tradition of taking warrants to chief judge for notorious cases or when district judges were unavailable had existed ever since he had been a prosecutor).

judge testified under oath that he and other chief judges have traditionally issued arrest warrants in special circumstances. We are guided by an analogous scenario in *Stump*, where there was likewise no state statute nor case law prohibiting a state circuit court, a court of general jurisdiction, from considering a petition for sterilization. *Stump*, 435 U.S. at 358, 98 S.Ct. at 1105–06. Because the court there was one of general jurisdiction, the lack of specific statutory authorization to approve the petition in question did not render the judge liable in damages. *Id.* at 359–60, 98 S.Ct. at 1106–07. Here, the Michigan circuit court is also vested with broad general jurisdiction such that, despite the lack of specific statutory authorization to issue arrest warrants, jurisdiction must be presumed because the matter in question has not been specifically proscribed by law.

Our analysis of the availability of absolute judicial immunity in the instant action is not constrained by the Michigan state district judge's finding that the procedure used to obtain the arrest warrant violated the Fourth Amendment. Specifically, the state judge found that the complaints before him contained "only legal conclusions without any factual allegations or information supporting those conclusions. Nor is the source of any information revealed." Judge Nelson Opinion; J.A. at 211. Regardless of whether we would so characterize the criminal complaint as completely lacking in factual support, *see infra* Part II.D, this procedural flaw does not wholly deprive Judge Kuhn of his presumed jurisdiction to act upon the complaint. *Cf. Barnes*, 105 F.3d at 1123. The commission of "grave procedural errors" by a judge exercising his or her authority will not strip the judge of the shield of absolute judicial immunity. *See Stump*, 435 U.S. at 359, 98 S.Ct. at 1106. Moreover, we believe that this case demonstrates that "the judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damages actions to prevent unjust results." *Mitchell v. Forsyth*, 472 U.S. 511, 522–23, 105 S.Ct. 2806, 2813, 86 L.Ed.2d 411 (1985). The built-in procedural safeguards available to Ireland in the underlying criminal action, including those she utilized—a motion to quash an

arrest warrant and a preliminary examination—served as appropriate checks on Judge Kuhn's exercise of his presumptive authority to issue an arrest warrant.

Recognizing the expansive scope of the jurisdictional inquiry contemplated in *Stump*, we cannot conclude that Judge Kuhn acted wholly outside his authority. Rather, we hold that Judge Kuhn's issuance of a warrant for Ireland's arrest constituted a judicial act within the presumed jurisdiction of the Oakland County Circuit Court. Accordingly, Judge Kuhn is entitled to absolute judicial immunity from suit for Ireland's claims stemming from the issuance of the arrest warrant.

### C. Absolute Prosecutorial Immunity

 Absolute or "quasi-judicial" immunity derived from common-law immunity accorded to judges has been extended to prosecutors when the prosecutorial activity is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 420, 430, 96 S.Ct. 984, 990, 995, 47 L.Ed.2d 128 (1976). The Supreme Court endorses a "functional" approach for determining whether an official is entitled to absolute immunity; we look to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988); *see also Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir.1989) ("Immunity rests not on status or title but on the function performed."). In our circuit, "precedent has established that 'the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process.'" *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir.1993), *cert. denied*, 512 U.S. 1237, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994) (quoting *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987)).

Ireland ties the availability of absolute prosecutorial immunity in the instant action to the jurisdiction of the court issuing the arrest warrant, such that absolute immunity

should not attach where a warrant is procured in a court lacking jurisdiction to issue the warrant. *See* Appellant's Br. at 33, 36. We have already held that Judge Kuhn issued the warrant for Ireland's arrest pursuant to at least a colorable claim of jurisdiction, sufficient for absolute judicial immunity purposes. We also believe this colorable claim of jurisdiction is sufficient for absolute prosecutorial immunity purposes. Thus, jurisdictional concerns aside, we must decide whether absolute prosecutorial immunity extends to the defendants' actions in the instant case.

Although in her complaint Ireland merges the roles defendants Thompson, Tunis, and Meiers played in her alleged constitutional deprivation, *see* First Amend. Compl. ¶¶ 19–22, 25; J.A. at 23–25, our review of the record reveals that each defendant performed particular actions. Thompson, as the elected Prosecuting Attorney for the County, received informal reports on the status of the Carlin investigation, attended various staff meetings, concurred in the recommendations of his subordinates that charges should be filed against Ireland, reduced the number of specific counts charged against Ireland, and ultimately concurred in the decision to seek a warrant for Ireland's arrest. *See* Thompson Deposition at 85, 86, 115–17; J.A. at 1546, 1547, 1554. Tunis, one of two attorneys directly overseeing the investigation, reviewed documents and transcripts of witness interviews, met with investigators, conducted legal research, drafted and periodically updated the criminal complaint and arrest warrant, signed and authorized the complaint, and presented the materials to Judge Kuhn. *See* Tunis Deposition at 17, 33, 58; J.A. at 1569, 1573, 1580. Meiers, a non-attorney criminal investigator, conducted witness interviews, reviewed documents, prepared reports, appeared before Judge Kuhn, signed the complaint as the complaining witness, and swore that the contents of the complaint were true. *See* Meiers Deposition at 120, 127–28, 130; J.A. at 1425, 1427, 1428.

In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that state prosecutors are absolutely immune from liability under § 1983 for initiating a criminal prosecution and presenting the state's case. *Id.* at 431, 96 S.Ct. at 995–96. After observing that at common law prosecutors were immune from malicious prosecution suits, the Court reasoned that policy considerations warranted similar immunity from § 1983 suits. *Id.* at 424, 96 S.Ct. at 992. Recognizing that retaliatory suits "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate," the Court expressed concern that if a prosecutor was not afforded absolute immunity, the prosecutor's exercise of independent judgment would likely be compromised to the detriment of public trust and the effective functioning of the criminal justice system. *Id.* at 425–26, 96 S.Ct. at 992–93. In addition to diverting the prosecutor's energy from "the pressing duty of enforcing the criminal law," these suits could often prove difficult to defend, imposing "unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials," and subjecting even the honest prosecutor to a "substantial danger of liability." *Id.* Furthermore, judicial review and professional discipline serve as unique checks on prosecutorial abuse which reduce the need for private damages actions. *Id.* at 427, 429, 96 S.Ct. at 993, 994. "To be sure, [absolute] immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," yet affording any less protection would "disserve the broader public interest" by preventing "vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427–28, 96 S.Ct. at 993–94. Thus, when a prosecutor's activities are "intimately associated with the judicial phase of the criminal process," absolute immunity applies "with full force." *Id.* at 430, 96 S.Ct. at 995.

The Supreme Court later qualified its broad prescription by restricting the availability of absolute prosecutorial immunity to acts falling within a prosecutor's role as advocate for the state in the judicial process. *See Burns v. Reed*, 500 U.S. 478, 491, 111

S.Ct. 1934, 1941–42, 114 L.Ed.2d 547 (1991). Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Id.* at 494, 111 S.Ct. at 1943. A prosecutor was therefore absolutely immune from suit for soliciting false testimony from witnesses and participating in a probable cause hearing that led to the issuance of a search warrant, but not for giving legal advice to the police regarding the use of hypnosis as an investigative technique and the existence of probable cause to arrest. *Id.* at 487, 492, 496, 111 S.Ct. at 1939–40, 1942–43, 1944–45. For this latter type of prosecutorial activity, administrative or investigative acts unrelated to judicial proceedings, qualified immunity is all that is available. *See id.* at 494–95, 111 S.Ct. at 1943–44; *see also Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994).

More recently, the Supreme Court again emphasized the functional tie between a prosecutor's conduct and the judicial process for purposes of the absolute prosecutorial immunity inquiry. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity," but "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615–16, 125 L.Ed.2d 209 (1993). With respect to investigative acts such as interviewing witnesses, the Court stated:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police

officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. *Id.* (quotation omitted). Accordingly, the prosecutors in *Buckley* were only entitled to qualified immunity for allegedly conspiring to fabricate evidence during the preliminary investigation of a crime, and for making false statements at a press conference. *Id.* at 275, 277, 113 S.Ct. at 2616–17, 2617–18.

 Thus, as the doctrine has emerged, absolute prosecutorial immunity protects only those acts falling within a prosecutor's role as advocate for the state and intimately associated with the judicial process, and not for administrative or investigative acts antecedent or extraneous to the judicial process. Investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection. *See Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615–16. We must decide whether the defendants' conduct in this case falls within the range of advocacy functions sufficiently related to the judicial process to warrant absolute prosecutorial immunity.

This circuit has had previous occasion to consider whether absolute immunity should extend to a prosecutor's decision to file a criminal complaint and seek an arrest warrant. The complaint in *Joseph v. Patterson,* 795 F.2d 549 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987), alleged that Oakland County prosecutors and investigators employed by the prosecutor's office, some of whom are the same players in the instant action, entered into concerted action with the police to bring false criminal charges against the Josephs and used coerced false statements to obtain arrest warrants, search warrants, and signatures on complaint forms from a state *Circuit Court* Judge.[5] *Id.* at 551. As in the

---

5. Although the parties do not cite this case as providing evidence that there is a custom of having circuit judges issue arrest warrants, *see supra* Part II.B, we find that it does lend cre-

dence to Judge Kuhn's testimony that this practice has indeed been occurring for some time in the Oakland County Circuit Court. Moreover, even though judicial immunity was not directly

case against Ireland, all criminal charges against the Josephs were dismissed upon preliminary examination in the district court. *Id.* at 552. Relying upon *Imbler,* the *Joseph* panel held that the prosecutors were protected by absolute immunity for "knowingly obtain[ing] issuance of criminal complaints and arrest warrants against the Josephs based on false, coerced statements." *Id.* at 555. "The decision to file a criminal complaint and seek issuance of an arrest warrant are quasi-judicial duties involved in 'initiating a prosecution.'" *Id.* As such, they are protected under *Imbler,* for "securing the person of the defendant is part of initiating a prosecution and should be insulated." [6] *Id.* at 556. *See also Grant v. Hollenbach,* 870 F.2d 1135, 1139 (6th Cir.1989) (holding prosecutor absolutely immune from suit for deciding to investigate and conspiring to present false charges to the grand jury).

Also at issue in *Joseph* was the appropriate level of immunity for investigators employed by the prosecutor's office. There we declared that:

> [A] nonjudicial officer who takes ministerial actions intimately related to the judicial process pursuant to the express direction and control of a prosecutor, who is directing the activity in fulfillment of a quasi-judicial responsibility, also has absolute immunity.... However, when the nonjudicial official undertakes action on his own initiative or when he carries out administrative or investigative functions of the prosecutor, he can only claim the affirmative defense of qualified immunity. In these instances, both the public policy and common law rationale which favor absolute immunity, as well as the checks and safeguards inherent in the judicial process, are absent.

*Joseph,* 795 F.2d at 560. Thus, pursuant to *Joseph*'s instruction, investigators performing acts remote from the judicial process must rely on qualified immunity for protec-

tion from § 1983 liability. *Compare Davis v. Grusemeyer,* 996 F.2d 617, 632 (3rd Cir.1993) (establishing general rule that "investigators for a prosecutor performing investigative work in connection with a criminal prosecution deserve the same absolute immunity as the prosecutor," although recognizing that conceivably "some aspects of an investigator's work for a prosecutor ... would have so attenuated a link to the prosecution that immunity should not attach"); *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995) (declaring that employees of district attorney's office are entitled to same degree of immunity as assistant district attorney "for their activities while assisting with the investigation and prosecution").

 If still sound law, *Joseph* controls the outcome in this case. Since *Joseph* predated *Burns* and *Buckley,* we have reconsidered its holding in light of the subsequent Supreme Court law. Upon consideration, we believe no post-*Joseph* Supreme Court or circuit law construing the boundaries of absolute prosecutorial immunity alters the essential teachings of *Joseph.* A prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity. In this role, a prosecutor is unquestionably functioning as an advocate for the state in the judicial process, and absolute immunity is fully justified because the integrity of the judicial system depends in large part upon a prosecutor's ability to exercise independent judgment in deciding whether and against whom to bring criminal charges. *See Imbler,* 424 U.S. at 431, 96 S.Ct. at 995–96; *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3rd Cir.1992) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role."). Presenting the charging documents to a judicial officer and procuring an arrest warrant must be considered part of the formal process of initiating a prosecution

---

at issue in *Joseph,* whether it was proper for those prosecutors to seek warrants from a judge of a state circuit court, as opposed to district court, was apparently never called into question.

**6.** *Joseph* further held that the preparation of and application for a search warrant fell within the

gray area of immunity analysis and the panel remanded for further factual development. As the instant matter concerns solely an arrest warrant, we have no occasion to reconsider *Joseph*'s holding with respect to the prosecutor's procurement of a search warrant.

and securing the presence of the accused at trial. *See Imbler,* 424 U.S. at 431, 96 S.Ct. at 995–96; *cf. Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) ("[T]he prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction," for which we shield the prosecutor because "any lesser immunity could impair the performance of a central actor in the judicial process." (footnote omitted)). Absolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution.[7]

■ Nonetheless, when a prosecutor or other official switches from presenting the charging document to vouching personally for the truth of the contents of the document, we believe the protection afforded by absolute immunity must give way to a qualified immunity inquiry.[8] *See Kohl v. Casson,* 5 F.3d 1141, 1146 (8th Cir.1993); *but see Roberts v. Kling,* 104 F.3d 316, 319 (10th Cir. 1997) (holding that action of investigator for district attorney's office in swearing out a complaint was prosecutorial in nature and entitled to absolute immunity). Absolute immunity at common law did not extend to complaining witnesses who "set the wheels of government in motion by instigating a legal action." *Wyatt v. Cole,* 504 U.S. 158, 164–65, 112 S.Ct. 1827, 1831, 118 L.Ed.2d 504 (1992); *see also Malley,* 475 U.S. at 340–41, 342, 106 S.Ct. at 1095–96, 1096–97 ("We do not find a comparable [common-law] tradition of absolute immunity for one whose complaint causes a warrant to issue"; "the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." (footnote omitted)). In *Malley,* the Supreme Court observed that

the action of an "officer applying for a warrant ... while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." *Malley,* 475 U.S. at 342–43, 106 S.Ct. at 1097. For these reasons, we believe that the only level of protection from suit that is potentially available when an official vouches for the truth of the contents of a criminal complaint is qualified immunity.

■ Applying the above principles to the defendants' actions in this case, we hold that Prosecutors Thompson and Tunis are entitled to absolute prosecutorial immunity for deciding to file a criminal complaint against Ireland, authorizing and preparing the complaint, seeking a warrant for her arrest, and, in the case of Tunis, presenting the charging documents to the judge. These were advocacy functions intimately associated with the judicial phase of the criminal process. Ireland does not contend that her alleged constitutional deprivation arose from the prosecutors' investigative activities undertaken antecedent to the decision to file criminal charges, nor does she contend that Thompson and Tunis acted outside their authority or otherwise beyond her criminal prosecution. That Ireland ascribes impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions. *See Joseph,* 795 F.2d at 557; *Schloss v. Bouse,* 876 F.2d 287, 291 (2d Cir.1989). Accordingly, the United States district court appropriately granted summary judgment to the prosecuting attorneys on the basis of their absolute prosecutorial immunity from Ireland's suit.

7. Of course, as noted above, not all investigative acts undertaken by a prosecutor will be absolutely protected. Conducting a preliminary investigation is generally removed from a prosecutor's role in a judicial proceeding; "such investigations take place outside the adversarial arena with its attendant safeguards that provide real and immediate checks to abusive practices." *Auriemma v. Montgomery,* 860 F.2d 273, 278 (7th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989).

8. We recognize that the question of whether absolute immunity extends to a prosecutor who allegedly made false statements in an affidavit supporting an application for an arrest warrant may be resolved by the Supreme Court in reviewing *Fletcher v. Kalina,* 93 F.3d 653 (9th Cir.1996) (denying absolute immunity protection to prosecutor's actions in preparing declaration in support of arrest warrant), *cert. granted,* —— U.S. ——, 117 S.Ct. 1079, 137 L.Ed.2d 214 (1997).

### D. Qualified Immunity for Swearing to the Complaint

The crux of Ireland's claim against investigator Meiers is that he vouched for the truth of the contents of the criminal complaint in front of a judicial officer.[9] For this function, any immunity protection available to him would be qualified, not absolute. An investigator in the prosecutor's office who provides the factual basis for criminal charges performs a function virtually identical to the police officer in *Malley*; thus, the immunity that protects the two actors should be the same.[10]

Government officials acting in their official capacities are not subject to individual damages liability "if their actions did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir.1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Greene*, 80 F.3d at 1104 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). According to Ireland, by presenting the complaint to a circuit court judge, and by signing and swearing to a complaint that plainly would not support probable cause,

Meiers acted unreasonably and violated her constitutional rights.[11]

In the context of arrest warrants, the Supreme Court affords officials broad qualified immunity protection. *See Greene*, 80 F.3d at 1104; *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096 (recognizing that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). In *Malley*, the plaintiffs alleged that a police officer caused them to be arrested unconstitutionally by presenting to a judge a complaint and supporting affidavit that failed to establish probable cause. *Malley*, 475 U.S. at 337, 106 S.Ct. at 1094. The Court subscribed to an "objective reasonableness" test: "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Id.* at 344–45, 106 S.Ct. at 1098 (citation omitted).

This "objective reasonableness" test is appropriate for determining whether in the instant action Meiers is immune from suit, for it was Meiers's complaint that caused Ireland's allegedly unconstitutional warrant to issue. In such a case, Meiers "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341,

---

9. Ireland does not challenge Meiers's actions in the course of his investigation, only his conduct before the judge in signing and swearing to the complaint. Furthermore, the complained-of actions in the instant case were all conducted before Ireland's criminal prosecution formally began; we therefore are not asked to determine the appropriate level of immunity for activities of an investigator in the prosecutor's office once prosecution has ensued.

10. We reject the holding of a recent Tenth Circuit case that an investigator for a district attorney's office was absolutely immune from suit for swearing out a criminal complaint before a magistrate judge, and obtaining an arrest warrant, on the ground that the investigator's actions were prosecutorial in nature. *See Roberts v. Kling*, 104 F.3d 316, 319, 320 (10th Cir.1997). The *Roberts* court was unpersuaded that the investigator's actions were analogous to those of the police officer in *Malley*. *Id.* at 321–22. Unlike the court in *Roberts*, we believe Meiers's actions

are comparable to those of the police officer in *Malley* for immunity purposes; both actors essentially vouched for the truth of the contents of a complaint that caused an arrest warrant to issue, based upon evidence uncovered in an investigation. *See Kohl v. Casson*, 5 F.3d 1141, 1146 (8th Cir.1993) (observing that prosecutor who, of his own accord, vouches for the truth of the arrest warrant affidavits is analogous to police officer in *Malley* ).

11. Ireland's assertion that Meiers presented the complaint to a circuit court judge lacking jurisdiction to issue arrest warrants does not survive our analysis of absolute judicial and prosecutorial immunity. Moreover, we agree with the United States district court's finding that "for purposes of qualified immunity, even if Judge Kuhn lacked the power to issue warrants, Defendant Meiers would be entitled to rely on longstanding practice to the contrary to establish the reasonableness of seeking a warrant from Judge Kuhn." *Ireland*, 907 F.Supp. at 1103 n. 10.

106 S.Ct. at 1096. "[P]robable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." *Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir.1993). Thus the proper inquiry, as framed by the district court below, is whether a reasonably competent investigator armed with Meiers's knowledge could have acted as Meiers did.

We agree with the United States district court that, given Meiers's knowledge at the time he swore to the complaint, reasonable officers could disagree as to whether there was sufficient probable cause to justify obtaining a warrant for Ireland's arrest. *See Ireland,* 907 F.Supp. at 1103. As found by the United States district court and supported by the record, Meiers was part of the team investigating the City's payments to Carlin, he personally conducted a substantial number of interviews, and he reviewed numerous documents. Presumably, then, Meiers knew at the time he swore to the complaint that Carlin had received payments directly from the City, that Ireland herself signed Carlin's overtime slips, that the budget submitted by Ireland did not advise the City Council of the payments, and that there was a dispute as to whether the Sheriff's Department had authorized the payments. *Ireland,* 907 F.Supp. at 1103. In a capsulized statement, Meiers himself testified that he believed unlawful activity had occurred because "Mayor Billie Ireland and Doris Keylon were aware of the fact that Gerard Carlin was not eligi-

ble to receive overtime as a Captain. Yet, they provided additional payment for him anyway knowing that." Meiers Deposition at 142; J.A. at 1431. Although the factual allegations contained in the complaint were limited to two counts,[12] the United States district court did not find the criminal complaint completely devoid of factual support for a finding of probable cause:

> [T]he facts provided in the complaint, although not included under each individual count, appear in their totality to lay a sufficient foundation for the claim that [Ireland] paid city funds to Captain Carlin without proper authorization from the [City Council] ... in violation of a Michigan statute dictating how deputy sheriffs are to be paid.

*Ireland,* 907 F.Supp. at 1104. Taking into consideration Michigan law requiring deputy sheriffs to be paid by the counties for which they work, *see* MICH. COMP. LAWS ANN. §§ 45.401–08 (West 1996), we believe the United States district court properly concluded that a reasonably competent officer could have found that the complaint adequately stated probable cause to arrest Ireland.

The Michigan state district judge faced with the task of determining whether at the preliminary examination the prosecutor had established probable cause to go forward with the charges concluded after four days of testimony that "certainly it was a most difficult case," but in the end "the facts did not fit the ... charges." Tr. of Prelim. Exam. at 7–8, 13; J.A. at 222–23, 228. This finding

---

**12.** Although the Michigan state district court found that the criminal complaint was constitutionally deficient in factual support, our task in this qualified immunity determination is not to determine whether probable cause in fact existed, but rather to determine whether "officers of reasonable competence could disagree" on the existence of probable cause. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Ireland has not established that a reasonable officer should have known that probable cause was lacking when the complaint failed to restate facts under each individual count, where factual support on the face of the complaint arguably laid the foundation for all the charges. *Compare Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause."). The United States district court observed that Ireland did not chal-

lenge "[d]efendants' assertion that the complaint in question fully complied with the requirements of the applicable Michigan court rules and statutes." *Ireland,* 907 F.Supp. at 1104; *see* MICH. COURT RULE 6.101 ("The complaint must include the *substance* of the accusation.") (emphasis added). Furthermore, Meiers was armed with knowledge from his investigation, going beyond the facts alleged in the complaint, about which a judge could inquire in making the probable cause determination. Here, however, Judge Kuhn found the complaint alone sufficient to establish probable cause to issue the arrest warrant. *Cf. Greene,* 80 F.3d at 1107 (recognizing that the issuance of an arrest warrant by a state judge serves as a factor in an objective reasonableness inquiry). We cannot conclude that the alleged factual deficiencies in the complaint render Meiers's actions in the instant case unreasonable.

by the state court does not necessarily mean that probable cause to make the initial arrest was lacking, but only demonstrates that after hearing the government's case as presented over the four day hearing, the judge was unconvinced that the case should continue. *Cf. Marx v. Gumbinner,* 905 F.2d 1503, 1507 (11th Cir.1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself.").

Under the circumstances before us, we cannot characterize the complaint to which Meiers swore as "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. Accordingly, because Meiers's actions in swearing to the complaint were objectively reasonable and violated no clearly established law, we hold that Meiers is entitled to qualified immunity under the *Malley* formulation.

### III. CONCLUSION

In sum, Judge Kuhn issued the warrant for Ireland's arrest in his judicial capacity and pursuant to a colorable claim of jurisdiction sufficient to shield him from § 1983 liability in the instant action; Prosecutors Thompson and Tunis are absolutely immune for deciding to file a criminal complaint against Ireland, preparing the complaint, seeking an arrest warrant, and presenting the materials to Judge Kuhn, for they were functioning as advocates for the state and performing actions intimately associated with the judicial process; and investigator Meiers, who vouched for the truth of the contents of the complaint, is entitled to qualified immunity because his involvement was objectively reasonable and violated no clearly established law. Therefore we **AFFIRM** the district court's orders granting summary judgment to all defendants.[13]

---

13. Given our holding that the district court correctly found that immunity bars Ireland's claims, Ireland's motions for summary judgment and to compel discovery were appropriately denied.