NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0215n.06

No. 10-4182

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Feb 23, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| WILLIAM DRAKE, Father of Brandon Drake; ANGIE DRAKE, Mother of Brandon Drake; BRANDON DRAKE, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| CHARLES HOWLAND; MORROW COUNTY, c/o Morrow County Commissioners; RODNEY K. CLINGER, Chairman; OLEN D. JACKSON, Vice Chairman; TOM HARDEN, | ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

Before: MERRITT and COOK, Circuit Judges; COX, District Judge.[*]

COOK, Circuit Judge. Plaintiffs-Appellants William and Angie Drake, individually and as

parents and natural guardians of their child, Brandon Drake, appeal the district court's grant of

judgment on the pleadings in favor of Defendant-Appellee Charles Howland, a Morrow County,

Ohio, prosecutor. In 2007, Howland prosecuted ten-year-old Brandon Drake for unlawful sexual

conduct with a minor child. After a judge dismissed the case against Brandon with prejudice, the

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of
Michigan, sitting by designation.

No. 10-4182
*Drake et al. v. Howland et al.*

Drakes brought a 42 U.S.C. § 1983 claim against Howland for malicious prosecution. The district court found Howland entitled to absolute immunity. We affirm the district court's judgment.

I.

The Drakes' complaint does not name the accuser, but in August 2007 someone claimed that ten-year-old Brandon Drake had unlawful sexual contact with his five-year-old cousin. Brandon denied the accusation and offered an innocent explanation: he and the purported victim were wrestling when the victim's brother pulled down Brandon's pants and the victim charged at his midsection. A flurry of accusations and denials followed, and the case eventually drew the attention of prosecutor Howland.

Beginning with the families of both Brandon and the victim, the controversy expanded to involve a widening circle of public officials. Following the initial allegation of sexual abuse, the victim's grandmother began posting signs in Edison, Ohio, warning of a "kid predator," and the victim's mother complained of Brandon's behavior to Brandon's school counselor. Concerned by the defamatory signs, the Drakes met with Edison Chief of Police Jon Edwards to discuss the accusation. After investigating, Edwards determined that no probable cause justified charging Brandon with a crime, but nevertheless referred the matter to Children and Family Services ("Children Services"). A few weeks later, a Children Services Investigator interviewed the victim and issued a report finding that "sexual abuse was indicated." Despite the findings, Children

- 2 -

Services elected not to pursue charges; instead, the agency recommended counseling for Brandon and only supervised contact between Brandon and the victim.

Three days after Children Services issued its report finding sexual abuse, the alleged victim's mother filed a complaint with the Morrow County Sheriff accusing Brandon of unlawful sexual contact. A detective of the Morrow County Sheriff's Office interviewed Brandon, Brandon repeated his story about wrestling with the victim, and the detective recommended that no charges be brought. Three months later, apparently disregarding the detective's recommendation, Morrow County prosecutor Howland charged Brandon with Gross Sexual Imposition, a third degree felony, in the Juvenile Division of the Morrow County Court of Common Pleas (the "juvenile court"). Howland initiated his prosecution of Brandon by filing a criminal complaint with the juvenile court. Central to the Drakes' arguments on appeal, Howland signed and swore "upon information and belief" to the allegations of the criminal complaint. Brandon formally denied the charges filed against him.

During the discovery phase of the criminal trial, the juvenile court ordered a "Psychosexual Evaluation" of Brandon. After conducting the court-ordered evaluation, a doctor concluded that Brandon lacked the "experiential factors" to commit sexual assault. Undeterred by the doctor's findings, Howland filed a notice of supplemental discovery and declared his intention to question the Children Services Investigator who determined that Brandon had sexual contact with the victim. Nevertheless, the juvenile court dismissed the case against Brandon with prejudice shortly after receiving the report.

Upon dismissal of the case against Brandon, the Drakes instituted this § 1983 action against Howland and various Morrow County officials, alleging that Howland's malicious prosecution of Brandon violated Brandon's "constitutional and federal rights." Finding that the doctrine of absolute prosecutorial immunity shielded Howland from the Drake's § 1983 claim, the district court dismissed the federal claim and declined to exercise supplemental jurisdiction over the remaining state law claims. The Drakes appeal.

II.

*A. Standard of Review*

We review de novo a district court's determination that absolute immunity protects a defendant from § 1983 liability. *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). Likewise, we review de novo a district court's grant of judgment on the pleadings. *See Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank*, *N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted)).

*B. Analysis*

Generally, prosecutors are immune from liability under § 1983 for prosecutorial functions intimately associated with initiating or presenting the State's case. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). But absolute immunity does not shelter a prosecutor's conduct unrelated to advocacy. *See Burns v. Reed*, 500 U.S. 478, 492 (1991) (giving legal advice); *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-78 (1993) (holding a press conference); *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997) (acting as a complaining witness). Courts deem these latter acts to be "investigative" or "administrative," rather than prosecutorial, and therefore protected only by qualified immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43 (2009).

The Drakes challenge the district court's absolute immunity finding on two fronts: first, they argue that Howland's act of signing and swearing to the criminal complaint against Brandon was the act of a witness—not a prosecutor—and is therefore unprotected by absolute immunity. Second, they submit that absolute immunity does not protect prosecutorial decisions made in the absence of probable cause to arrest.

We begin by addressing the Drakes' first argument, that "Howland's decision to swear and sign the criminal complaint" constituted an administrative or investigative act, unshielded by absolute immunity. In response to this argument, Howland claims that he acted as an advocate in preparing, signing, and filing the complaint.

Both are partially correct. Absolute immunity shields from § 1983 liability both Howland's decision to file the complaint and his preparation and filing of it, but not his swearing to the truth

of the complaint's contents. A prosecutor's differing roles warrant different protection. When a prosecutor acts as advocate for the state in deciding to prosecute and bringing the complaint, absolute immunity holds. *See Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997). But vouching for the truth of statements in a complaint is the act of a witness, and only qualified immunity shields a testifying prosecutor from liability. *See Kalina*, 522 U.S. at 129-31; *see also Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) ("[A] prosecutor is entitled to only qualified immunity when she acts as a complaining witness by making sworn statements to the court in support of a criminal complaint." (citing *Kalina*, 522 U.S. at 129-31)).

*Kalina* provides a helpful analogue. In *Kalina*, a prosecutor filed a "Certification for Determination of Probable Cause" summarizing the evidence supporting a charge along with an unsworn information and motion for an arrest warrant. *Kalina*, 521 U.S. at 121. The prosecutor "personally vouched for the truth of the facts set forth in the certification," and the court issued an arrest warrant based on the prosecutor's sworn statement. *Id.* at 121. The certification included two factual inaccuracies, and the trial court eventually dismissed the charges against the defendant. *Id.* at 121-22. Following the dismissal, the former defendant brought a § 1983 claim "based on [the prosecutor's] alleged violation of his constitutional right to be free from unreasonable seizures." *Id.* at 122.

The Court found that absolute immunity protected the prosecutor's activities in connection with preparing and filing all three documents, including "her drafting of the certification, her

determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court." *Id.* at 130. But the Court denied absolute immunity for the prosecutor's act of offering sworn statements in the certification, holding that "[t]estifying about facts is the function of the witness, not of the lawyer." *Id.* at 130.

Arguably, Howland similarly acted as a witness. In swearing to the contents of the complaint against Brandon, Howland complied with the Ohio Rules of Juvenile Procedure's requirement that a complaint be "made under oath" and include "the essential facts that bring the proceeding within the jurisdiction of the [juvenile] court." Ohio R. Juvenile P. 10(B). Further, Howland himself did not need to make the factual assertions in the complaint; the Ohio Rules of Juvenile Procedure allow "any person having knowledge of a child who appears to be a . . . delinquent" to file a complaint. Ohio R. Juvenile P. 10(A); *see also Kalina*, 522 U.S. at 129 (noting that "neither federal nor state law made it necessary for the prosecutor to make [the factual assertion]").

On the other hand, the complaint contained skeletal factual allegations, not factual assertions grounded on personal knowledge. Howland's allegations included only Brandon's birth date, the names and address of Brandon's parents, and a one-sentence description of Brandon's conduct parroting the language of the criminal statute he allegedly violated. Nothing in the Drakes' complaint or in Howland's complaint to the juvenile court suggests that Howland uncovered the facts in the complaint through his own investigation. Instead, Howland swore to the allegations

"upon information and belief"—all that is required by the Ohio Rules of Juvenile Procedure. Ohio R. Juvenile P. 10(B).

Even assuming, however, that Howland's act of vouching for these allegations undercuts his immunity, the Drakes aim their § 1983 action elsewhere. The crux of their claim is that Howland's prosecution of Brandon infringed Brandon's right to be free of prosecution without probable cause. The Drakes do not claim that Howland included false statements in the complaint that he filed in juvenile court, that Howland undertook his own investigation of Brandon's case, or that Brandon was seized in violation of his Fourth Amendment rights. Essentially, the Drakes' complaint faults Howland for pursuing criminal charges against Brandon despite the investigators' unanimous assessment to the contrary. This is why the district court found that absolute immunity insulates Howland from the Drakes' § 1983 claim; the Drakes' malicious prosecution claim impugned Howland's *decision to prosecute*, not the propriety of the complaint. As the court put it,

> [T]he essence of Plaintiffs' § 1983 claim is that impropriety lay in Howland's actual *decision* to file and then maintain criminal charges against Brandon in the face of allegedly conflicting evidence; a prosecutor's decision to bring and maintain charges is squarely within the doctrine of absolute prosecutorial immunity. In this regard, Plaintiffs' complaint does not allege anything improper about the actual criminal complaint, or list this document as the source of the alleged injuries. Nor does Plaintiffs' complaint allege any involvement on Howland's part in activities, such as preliminary investigations, that would potentially be beyond the scope of absolute immunity.

We agree. Though Howland acted as a witness by swearing to the complaint, the Drakes' § 1983 claim targets Howland's decision to file suit. As the district court notes, the Drakes do not

list the complaint as the source of their injuries or allege that Howland undertook an investigation that exceed the scope of absolute immunity, thus distinguishing this case from *Kalina* and its progeny in this circuit. *See, e.g.*, *Cooper v. Parrish*, 203 F.3d 937, 948-49 (6th Cir. 2000) (denying absolute immunity to a prosecutor who allegedly denied plaintiff procedural and substantive due process by executing a raid on their property after swearing to a recitation of facts based on his own investigation).

In an attempt to establish that the complaint itself caused Brandon harm, the Drakes argue that the complaint functioned as an instruction to arrest Brandon, an administrative/investigative act protected only by qualified immunity. *See Ireland*, 113 F.3d at 1445. Relying on this rule, the Drakes analogize Howland's actions to the defendants in *Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999), and *Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008). In both cases, we affirmed the denial of absolute immunity to prosecutors who counseled on the legality of an arrest or who instructed police to arrest a suspect. *See Prince*, 198 F.3d at 615; *Harris*, 513 F.3d at 510-11.

The comparison collapses, however, when scrutinized under the Ohio Rules of Juvenile Procedure. Those rules provide only for the issuance of a summons requesting that a party appear and answer the allegations in the complaint. *See* Ohio R. Juvenile P. 15. Unlike an arrest warrant, a summons requiring a defendant to appear and answer charges in court does not alone constitute an arrest, or even a seizure under the Fourth Amendment. *See DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (holding that a traffic ticket that required a plaintiff to appear at

hearing and answer to charges was not a "seizure"); *Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir. 2010) ("We therefore are joining a consensus of appellate courts in holding that a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."); *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes."). Accordingly, we are not persuaded that Howland's complaint functioned as an instruction to arrest Brandon, or that Brandon suffered an arrest as a result of the complaint.

Finally, the Drakes contend that a prosecutor's actions garner no absolute immunity protection in the absence of probable cause to arrest a suspect. Quoting *Buckley*, the Drakes argue that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274. The district correctly dismissed this argument by citing *Buckley's* footnote immediately following the statement that the Drakes believe supports their position. The footnote forecloses the Drakes' argument: "The reason that we grant [absolute immunity] for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, *whether he has probable cause or not*." *Id.* 274 n.5 (emphasis added); *see also Gregory v. City of Louisville*, 444 F.3d 725, 740 (6th Cir. 2006) ("The *Buckley* Court dismissed the argument that probable cause was a dividing line for potential liability attendant to prosecutors' actions."). Like the district court, we reject the Drakes' reading of *Buckley*.

III.


For these reasons, we **AFFIRM** the district court's judgment on the pleadings.