RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NICOLE HOWELL,

               _Plaintiff-Appellant,_

      _v._

ROB SANDERS,

               _Defendant-Appellee._

No. 10-5797

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 09-00200—William O. Bertelsman, District Judge.

Argued: November 30, 2011

Decided and Filed: February 2, 2012

Before: DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Charles T. Lester, Jr., ERIC C. DETERS & ASSOCIATES, LLC,
Independence, Kentucky, for Appellant. Michael E. Nitardy, FROST BROWN TODD
LLC, Florence, Kentucky, for Appellee. **ON BRIEF:** Eric C. Deters, ERIC C.
DETERS & ASSOCIATES, LLC, Independence, Kentucky, for Appellant. William T.
Robinson III, FROST BROWN TODD LLC, Florence, Kentucky, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Nicole Howell appeals the district
court's grant of summary judgment in favor of Rob Sanders on the basis of absolute and
qualified prosecutorial immunity. Sanders is the Kentucky Commonwealth's Attorney
for the Sixteenth Judicial District in Kentucky. Howell, a high school teacher, sued
Sanders after a jury acquitted her of criminal charges brought by Sanders's office

1

relating to alleged sexual abuse of a minor student. Howell claimed constitutional violations under 42 U.S.C. § 1983 and state-law torts of malicious prosecution and intentional infliction of emotional distress. The district court held that Sanders's actions were taken in the course of his prosecutorial duties, entitling him to absolute immunity, and in any event that his actions were not in violation of clear constitutional rights, thereby entitling him to qualified immunity. For the following reasons, we affirm.

## I. BACKGROUND

Howell became a teacher at Dayton High School ("DHS") in Dayton, Kentucky in May 2008. Seven months later, in December 2008, Howell approached the principal at DHS to deny rumors that she had a sexual relationship with a minor student, JS. The principal spoke with JS, who denied the allegations. Several days later, however, JS changed his story and stated that he did have sex with Howell. The school called the police. Because the alleged sexual conduct took place at Howell's apartment, which was in Covington, Kentucky, the investigation was passed to Detective Bryan Frodge of the Covington Police Department, which works with Sanders's office.

In an interview on December 16, 2008, JS stated he had consensual sexual intercourse with Howell four to five times at her apartment. JS gave a description of her apartment, its location, and a tattoo and skin graft on Howell's body. On December 24, 2008, Detective Frodge interviewed Howell, who appeared voluntarily and in the presence of her attorney. Howell admitted to exchanging sexually inappropriate text messages with JS, but denied ever having a physical relationship with him or that he was ever at her apartment. During that interview, which was recorded, Detective Frodge stated to Howell that if she took a polygraph and passed, "this thing is gone." R. 11, Ex. 20 (Frodge-Howell Interview Tr. at 72:10-12).

Detective Frodge photographed the interior of Howell's apartment and her tattoos with her consent on January 8, 2009. Upon confirming that the photos matched the descriptions provided by JS, Detective Frodge met with Stefanie Kaster, an assistant prosecutor in Sanders's office. According to Detective Frodge's Log, Kaster decided to proceed with an arrest warrant. R. 11, Ex. 13 (Case Log at 2). Detective Frodge

drafted a complaint and an affidavit, R. 11, Ex. 15 (Frodge Compl. & Aff.), and sent it to Kaster, who made minor edits. On January 9, 2009, the documents were presented to Judge Easterling of the Kenton District Court, who found probable cause and issued a warrant for Howell's arrest. R. 11, Ex. 16 (Warrant).

Prior to executing the warrant, Detective Frodge made a courtesy call to Howell's attorney, who asked whether the polygraph offer was still on the table and whether the execution of the warrant could be delayed until the following week to accommodate a polygraph. Detective Frodge indicated in his log that upon consulting with Kaster, she advised him to "hold off," and he scheduled the polygraph exam for January 13, 2009. R. 11, Ex. 13 (Case Log at 2).

Howell appeared for the polygraph on January 13, 2009, but the exam was never administered. Why the polygraph was cancelled is a matter of some debate. Howell claims that the polygraph exam was called off by Sanders upon learning that she had passed one administered by her attorney. Appellant Br. at 17. Sanders does not explicitly deny his involvement in cancelling the polygraph, but the record evidence suggests the polygrapher himself called off the test. R. 11, Ex. 13 (Case Log at 2); R. 11, Ex. 22 (Polygraph Report at 3). The parties agree that around the time that the polygraph was cancelled, Sanders directed Detective Frodge to arrest Howell, which he did.

On January 20, 2009, a judge bound the case over to a grand jury at a preliminary hearing. On March 19, 2009, a grand jury returned an indictment. A jury trial was held in October 2009, during which the victim significantly changed his testimony.[1] The jury quickly acquitted Howell. One month later, Howell filed the instant action in the Eastern District of Kentucky against Rob Sanders, claiming violations of 42 U.S.C. § 1983 for false arrest, malicious prosecution, and violations of due process. She also raised state-law claims for malicious prosecution and intentional infliction of emotional distress

---

[1]The victim had previously told the police that the sexual encounters occurred prior to November 1, 2008. Upon taking the stand, he instead testified that the first sexual encounter occurred November 7, 2008, which was outside the initial time frame set forth in the indictment.

under Kentucky law.  Sanders filed a motion to dismiss the complaint or, in the alternative, for summary judgment, which the district court indicated it would treat as a motion for summary judgment.  Following oral argument,[2] the district court issued an opinion granting the defendant's motion with respect to all claims.  *Howell v. Sanders*, 755 F. Supp. 2d 789, 790, 800 (E.D. Ky. 2010).  Howell filed a timely notice of appeal.

## II.  SECTION 1983 CLAIM

We review de novo a district court's decision to grant summary judgment on the basis of immunity.  *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996).  Summary judgment is granted when there is no genuine dispute as to any material fact and relief may be granted as a matter of law.  Fed. R. Civ. P. 56(a).  In reviewing the facts, all inferences are drawn in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.  Absolute Prosecutorial Immunity

State prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties.  *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir.), *cert. denied*, 522 U.S. 996 (1997).  The Supreme Court employs a "functional approach" to determine when a prosecutor is acting within the scope of his duties as a prosecutor and when he is merely giving legal advice or investigating.  *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).  "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process."  *Ireland*, 113 F.3d at 1443 (internal quotation marks omitted).  The party seeking the benefit of a claim of absolute immunity has the burden of establishing it.  *Burns*, 500 U.S. at 486.

---

[2]At the end of oral argument, the district court denied Howell's last-minute request for depositions because her counsel had already informed the district court at the beginning of the hearing that the record was sufficient.  Howell does not appeal this denial.

The district court held that Sanders was entitled to absolute immunity because his actions mirrored those in *Ireland* and were similarly associated with his role as an advocate and not an investigator. *Howell*, 755 F. Supp. 2d at 796-97. The district court reviewed the record and determined that Sanders took action only after the issuance of the arrest warrant, specifically the decision to execute the arrest warrant without giving Howell the opportunity to take a polygraph. *Id.* at 796. After thoroughly reviewing and synthesizing the major Supreme Court cases on this subject, the district court determined that Sanders's actions related solely to his role as a prosecutor. *Id.* at 796-97.

Howell does not disagree with the legal standard used by the district court; instead, she disagrees that Sanders's actions were sufficiently related to advocacy and not investigation. Howell makes three primary arguments against the application of absolute immunity: (1) the arrest warrant was not supported by probable cause; (2) even if there was probable cause, the acts of (a) commanding Howell's arrest and (b) denying Howell's request to take a polygraph were not related to advocacy; and (3) none of Sanders's actions can be considered advocacy when he never prosecuted her case. None of these claims has merit.

### 1.  Probable Cause for Arrest Warrant

As will be discussed in Part II.B, the district court did not err in concluding that the arrest warrant was amply supported by probable cause. The existence or non-existence of probable cause, however, is not determinative of whether absolute immunity applies, even though it may assist the court in deciding whether the prosecutor's action is one of fact-gathering or trial preparation. "The dividing line is not . . . the point of determination of probable cause. Instead, the dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process." *Prince v. Hicks*, 198 F.3d 607, 614 (6th Cir. 1999). The Supreme Court's statement that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested," states nothing to the contrary. *Buckley*, 509 U.S. at 274. As we explained at length in *Prince*, 198 F.3d at 614, the Supreme Court qualified that statement in *Buckley* by noting that a prosecutor

who conducts investigative work following a finding of probable cause is not entitled to absolute immunity, *id.* at 274 & n. 5, even though a prosecutor who maliciously institutes a false prosecution with no probable cause is entitled to absolute immunity, *id.* Thus, the inquiry remains one of function and not probable cause. We therefore consider whether the district court correctly classified Sanders's actions as "intimately associated with the judicial phase of the criminal process." *Ireland*, 113 F.3d at 1443 (internal quotation marks omitted).

### 2. Function of Specific Actions Taken by Sanders

Although Howell makes generalized statements that Sanders "actively participated in the investigatory stage," Appellant Br. at 2, the only two specific actions she points to are Sanders's decision to order the police to execute the arrest warrant and the decision to cancel the polygraph exam, *id.* at 32.[3] We examine each in turn.

#### a. Arrest "Command"

Howell claims that Sanders was not acting as an advocate when he commanded the police to arrest her. A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity. *Imbler*, 424 U.S. at 430-31; *Ireland*, 113 F.3d at 1446. However, a prosecutor does not act as an advocate if he is merely "advising the police in the investigative phase of a criminal case." *Burns*, 500 U.S. at 493; *Prince*, 198 F.3d at 614-15 (rejecting absolute immunity for prosecutor who advised the police on the existence of probable cause before the prosecutor herself made the decision to initiate criminal proceedings).

---

[3] Howell tries to link Sanders to additional conduct by referring to actions by his office. *See, e.g.*, Appellant Br. at 13 ("Detective Frodge's investigation log also reveals the in-depth corroboration of the Commonwealth Attorney's Office."). The Detective's log, however, never references Rob Sanders, only Stefanie Kaster, an assistant prosecutor. Even assuming that Howell raised supervisory liability as a basis for her § 1983 claim, which she did not, such claims must be based "on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Aside from Sanders's name on a contact sheet and some allegations as to what Sanders purportedly "knew," Howell offers nothing that would demonstrate that Sanders "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (internal quotation marks omitted).

This court has previously held under very different circumstances that commanding an arrest is investigatory.  In *Harris v. Bornhorst*, 513 F.3d 503, 510-511 (6th Cir.), *cert. denied*, 554 U.S. 903 (2008), we denied absolute immunity for a prosecutor's instruction to the police to make the arrest of the suspect upon hearing a recording of his confession.  At first glance, *Harris* appears to support Howell's argument:  "[The prosecutor] went beyond merely advising the police; she *instructed* them to arrest Harris, without soliciting any officer's opinion." *Id.* at 510-511 (emphasis in original).[4]  But that same language demonstrates a key difference.  In *Harris*, the prosecutor independently decided that probable cause existed upon watching a confession that was blatantly coercive and on that basis alone ordered the suspect's arrest.  *See also Manetta v. Macomb Cnty. Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998) (prosecutor's participation in arrest of suspects following stake-out not entitled to absolute immunity even though his later action to obtain arrest warrant was).  Here, in contrast, a state judge made the determination that probable cause existed upon a complaint and affidavit filed by the investigating officer, and the prosecutor initiated the criminal proceedings by ordering the suspect's arrest pursuant to the validly issued warrant.

We see no reason to hold as a blanket rule that commanding the arrest of a suspect is per se outside the scope of a prosecutor's role as an advocate, particularly when, as here, the instruction follows the issuance of a valid arrest warrant by a neutral judge and is supported by probable cause.  Sanders's act in this case was no less related to initiating criminal proceedings against Howell than if he had decided to seek and obtain the arrest warrant in the first place.  *See Ireland*, 113 F.3d at 1446 ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant . . . fall[s] squarely within the aegis of absolute prosecutorial immunity.").

---

[4]And some cases even describe *Harris* as "affirming denial of absolute immunity to a prosecutor who instructed police to arrest suspect."  *See Adams v. Hanson*, 656 F.3d 397, 402-03 (6th Cir. 2011) (affirming absolute prosecutorial immunity in unrelated context).

### b.  Denial of Polygraph Exam

Howell argues that cancelling her polygraph must be investigatory because the decision "whether to give or not to give someone a polygraph exam . . . cannot rationally be argued to be anything other than ordinary police work."  Appellant Br. at 33. Conducting a polygraph may indeed be investigatory, depending on context.  *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1267 (8th Cir.) (holding prosecutor's review of polygraph results provided by defendant not investigative work, even if similar to an act sometimes performed by police), *cert. denied*, 519 U.S. 867 (1996).  But the fact that prosecutors often engage in work that resembles traditional police activities does not remove such acts from the protections of absolute immunity if they were done during the course of preparing for trial.  "[I]n determining immunity, we examine the nature of the function performed, not the identity of the actor who performed it."  *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks omitted).

Prosecutors executing their duties must be given immunity in the "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."  *Buckley*, 509 U.S. at 273.  Consistent with this principle, the "[p]reparation of witnesses for trial is protected by absolute immunity."  *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003).  Thus the same act of interviewing witnesses is protected when done to evaluate evidence and prepare for trial, but not when done at the earlier stage of "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested . . . ."  *Buckley*, 509 U.S. at 273.

Sanders does not attempt to explain why his decisions with respect to the polygraph were in relation to trial preparation, despite having the burden to do so.  *See Burns*, 500 U.S. at 486.  Nor does it seem likely that the decision with respect to the polygraph related to preparing for trial.  However, the decision does seem integrally related to the initiation of the criminal proceedings against Howell in the same way

ordering her arrest was. At most, the facts suggest that Sanders stopped a polygraph[5] in order to initiate Howell's prosecution, which was well within his role as an advocate for the state of Kentucky. *See Imbler*, 424 U.S. at 431 n. 33; *Ireland*, 113 F.3d at 1446 ("[T]he integrity of the judicial system depends in large part upon a prosecutor's ability to exercise independent judgment in deciding whether and against whom to bring criminal charges."). Thus even if there is some dispute over what happened regarding the polygraph situation, the dispute does not preclude summary judgment on this issue as it does not relate to a material fact.[6]

Howell attempts to paint Sanders as interfering in the fact-gathering portion of the investigation, essentially asking the court to ignore that the police had already gone to a judge with sufficient facts to obtain an arrest warrant based on probable cause. The record does suggest that the police were still willing to conduct a polygraph at this point, with consultation from Stefanie Kaster. Even under Howell's version of the facts, however, at most Rob Sanders disagreed with the decision to delay initiating her prosecution to accommodate a polygraph and instructed the officers to proceed with the execution of the arrest warrant. None of these facts alter the conclusion that Rob Sanders was acting in his capacity as an advocate and not engaging in an investigatory function; he is entitled to absolute immunity.

### 3. Sanders's Advocacy

Howell briefly claims that Sanders's conduct cannot be deemed advocacy if he was not the attorney who prosecuted her at trial. She offers no case in support of this statement, and we reject this claim. *See, e.g.*, *Brodnicki*, 75 F.3d at 1267 (rejecting

---

[5]And it is not entirely clear Sanders did that. If the polygrapher called off the exam himself and Sanders did not care or insist that it go forward, such conduct is simply not an "act" on which § 1983 liability could be premised. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As noted earlier, on summary judgment we must view the facts from Howell's perspective.

[6]The district court did not address the competing facts regarding whether Sanders was the one who cancelled the polygraph, but evaluated the claim from the perspective that Sanders "proceed[ed] with the prosecution without giving plaintiff the opportunity to take a polygraph test." *Howell*, 755 F. Supp. 2d at 796. The dispute is also ultimately not relevant because Howell never claims any constitutional violation on the basis of the cancelled polygraph. R. 1 (Compl.); *see infra* note 7.

argument that prosecutor who did not try case was not entitled to absolute immunity for his actions on the case).

### 4. Conclusion

Howell has presented no compelling argument regarding how any of Sanders's actions in this case could be deemed investigatory and not prosecutorial, even when we view the facts in the light most favorable to Howell. We therefore hold that Sanders is entitled to absolute immunity from Howell's claims.

## B. Qualified Prosecutorial Immunity

The district court held in the alternative that all of Sanders's actions were protected by qualified immunity even if absolute immunity did not apply. We also affirm the judgment on this basis. In order for qualified immunity to apply, we must answer two questions in the affirmative: (1) do "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) was "the right at issue [] 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). We need not consider these questions in any particular order. *Id.* at 236; *Kennedy v. City of Villa Hills*, 635 F.3d 210, 213-14 (6th Cir. 2011). Unlike absolute immunity, the burden lies on the plaintiff to refute a defense of qualified immunity once properly pleaded. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *cert. denied*, 528 U.S. 1136 (2000). Here, the defendant properly raised qualified immunity in his motion to dismiss.

Howell, on appeal, argues that three different actions by Sanders violated her constitutional rights: (1) her "[w]rongful [a]rrest," (2) Sanders's "[f]ailure to [d]isclose [e]xculpatory [e]vidence," namely certain cell-phone records, and (3) his "[m]alicious [p]rosecution" of her.[7] Appellant Br. at 37, 38, 39. The latter two are easily disposed of as both are established prosecutorial actions covered by absolute immunity. Failure

---

[7]Confusingly, these are not the actions that Howell discusses in her argument against absolute immunity, where she refers to only the polygraph cancellation and the command to arrest. Although Howell takes great issue with the purported cancellation of the polygraph in discussing absolute immunity, she never explains what constitutional right Sanders violated even if he did deny her the exam.

to disclose purportedly exculpatory evidence clearly falls within the judicial stage and is protected by absolute immunity. *See Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir.), *cert. denied*, 131 S. Ct. 82 (2010). Also, a prosecutor may bring and litigate charges with absolute immunity, even if the prosecutor acts with malice and without probable cause. *Buckley*, 509 U.S. at 274 n.5; *Imbler*, 424 U.S. at 427. The "malicious prosecution" cases cited by Howell were brought against other participants in a prosecution, not the prosecutor himself.[8]

The only act remaining that could be a constitutional violation is Sanders's order that the police arrest Howell. However, "[i]n the context of arrest warrants, the Supreme Court affords officials broad qualified immunity protection." *Ireland*, 113 F.3d at 1448. Qualified immunity generally applies unless "it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* (internal quotation marks omitted). The district court noted that "although there were some inconsistencies" in the complaining student's testimony, "probable cause existed from the time the complaining student first gave an interview in the presence of the investigating police officer." *Howell*, 755 F. Supp. 2d at 797-98. On review, we need not decide precisely the point at which probable cause appeared in order to hold that a reasonably competent officer could have concluded that a warrant should issue in this case.

This court has previously upheld a finding of probable cause to arrest on the basis of a complaining witness's statement alone. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). However, as noted in *Ahlers*, more may be required when the officers have reason to doubt the truthfulness or reliability of the complaint. *Id.* Here, the complaining witness initially denied that he had sexual relations with Howell. His statements in his initial interview with the police also had some inconsistencies—first

---

[8]*See, e.g.*, *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003) (malicious criminal prosecution claim against non-prosecutors); *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (rejecting absolute immunity in a malicious criminal prosecution claim against a police officer explicitly because he was not a prosecutor).

he stated that they had sex the first time he visited her apartment, but later he stated that on his first visit they only visited and ordered food.

The arrest warrant, however, was not obtained on this information alone. The police were able to corroborate the complaining witness's description of Howell's apartment and a tattoo, and they had a statement from Howell admitting to exchanging sexually explicit text messages with the student. Howell argues that the corroboration should be insufficient because some of JS's descriptions were generic, which is true, or could have been visible through other sources, such as sneaking on to her neighbor's deck. But these arguments do not defeat a finding of probable cause. At most they demonstrate that reasonable people may have disagreed on the issue of probable cause, not that Sanders was unreasonable in thinking probable cause existed to arrest Howell. And unlike in *Harris*, 513 F.3d at 510-11, where the prosecutor made the probable cause determination on her own with no input from others based on patently unreliable evidence, numerous other officials confirmed probable cause on the basis of this evidence, including Detective Frodge and Judge Easterling.

The district court was therefore correct in concluding that, because Sanders did not violate Howell's asserted constitutional rights, qualified immunity also applied.[9]

## III.  STATE-LAW CLAIMS

Finally, Howell appeals the dismissal of her state-law tort claims on the merits. Similar to federal law, Kentucky offers both absolute immunity and qualified immunity to prosecutors. *Jefferson Cnty. Commonwealth Attorney's Office v. Kaplan*, 65 S.W.3d 916, 920 (Ky. 2002). Kentucky also uses function as the dividing line, providing absolute immunity for a prosecutor's actions taken as an advocate and only qualified immunity for those taken as an investigator. *McCollum v. Garrett*, 880 S.W.2d 530, 535 (Ky. 1994). Qualified immunity in Kentucky, however, still requires a showing of the subjective element of good faith that was rejected under federal law in *Harlow v.*

---

[9]The district court was also correct to reject Howell's claim that JS's subsequent variation in the dates of the sexual encounters somehow retroactively undermined the probable-cause determination made at the time of arrest. *Howell*, 755 F. Supp. 2d at 798 n.7.

*Fitzgerald*, 457 U.S. 800, 816-18 (1982). *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006). Kentucky provides qualified immunity from tort liability for public officers and employees for "(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

We affirm the district court's dismissal of both of Howell's state-law claims, but solely on the basis of absolute and qualified immunity under Kentucky law. Howell's state-law malicious prosecution claim was properly dismissed because the underlying conduct was all protected by absolute immunity under the identical state and federal standards. The cases offered by the plaintiff in support of her claim did not involve prosecutors. *See, e.g.*, *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003) (malicious criminal prosecution claim against non-prosecutors); *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (rejecting absolute immunity in a malicious criminal prosecution claim against a police officer explicitly because he was not a prosecutor); *Raine v. Drasin*, 621 S.W.2d 895, 898-99 (Ky. 1981) (malicious prosecution claim against attorneys who filed civil suit). We therefore do not need to consider whether Howell's claim must also be dismissed for failure to state a claim under Kentucky law.

Sanders is also entitled to absolute and qualified immunity for Howell's claim of intentional infliction of emotional distress. The only allegedly outrageous conduct that was even arguably outside the scope of the prosecutor's function as an advocate was the supposed wrongful arrest. As already discussed, under the federal standard Sanders is entitled to qualified immunity for this action. The only remaining inquiry to establish qualified immunity under Kentucky law is whether the facts suggest that Sanders acted in bad faith. *See Rowan Cnty.*, 201 S.W.3d at 475. This inquiry is resolved by determining "whether the official has behaved with permissible intentions." *Bryant v. Pulaski Cnty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011) (internal quotation marks omitted). Here, none of the facts on the record support a finding that Sanders did not honestly believe in the purpose of the actions he was taking. *Cf. id.* at 467 (reversing summary judgment on question of good faith when official's act of throwing gas on an

open fire created an issue of whether he was acting with no intent to harm). We therefore decline to consider whether Howell's claim for intentional infliction of emotional distress must also be dismissed for failure to state a claim.

Howell's state-law claims were properly dismissed on the basis of both absolute and qualified immunity.

## IV. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Sanders.