RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MAJESTIC BUILDING MAINTENANCE, INC.,

*Plaintiff-Appellant,*

*v.*

No. 16-4342

HUNTINGTON BANCSHARES INCORPORATED, d/b/a The
Huntington National Bank,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:15-cv-03023—James L. Graham, District Judge.

Argued: June 21, 2017

Decided and Filed: July 20, 2017

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Troy J. Doucet, DOUCET & ASSOCIATES, CO., L.P.A., Dublin, Ohio, for
Appellant. Lisa M. Ghannoum, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellee.
**ON BRIEF:** Troy J. Doucet, Zachary T. Donovan, DOUCET & ASSOCIATES, CO., L.P.A.,
Dublin, Ohio, for Appellant. Lisa M. Ghannoum, Brett A. Wall, Kenneth G. Prabucki, BAKER
& HOSTETLER LLP, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Plaintiff Majestic Building Maintenance, Inc., appeals from the

order entered by the district court granting the motion to dismiss of Defendant Huntington

Bancshares, Inc., d/b/a The Huntington National Bank, thereby dismissing all of Plaintiff's claims against Defendant for violating the Uniform Commercial Code, U.C.C. §§ 4-103(a), 4-401, codified as Ohio Revised Code, O.R.C. §§ 1304.03, 1304.30, whereby Defendant refused to assume liability for monies paid out of Plaintiff's bank account on four fraudulent checks.

For the reasons that follow, we **REVERSE** the district court's order of dismissal and **REMAND** with instructions to allow Plaintiff an opportunity to amend the complaint and conduct discovery.

## BACKGROUND

### A. Factual History

Plaintiff specializes in commercial cleaning services. In November 2010, Plaintiff, through its president, Luther McNeil ("McNeil"), opened a business checking account with Defendant and received a "Master Services Agreement" ("Agreement") that contained the rules and regulations for business accounts. The section of the Agreement at issue in this case states:

> [W]e have available certain products designed to discover or prevent unauthorized transactions, including unauthorized checks and ACH debits, forgeries, and alterations (all such activities referred to as "fraud"). While no such product is foolproof, we believe that the products we offer will reduce the risk of loss to you from fraud. You agree that if your account is eligible for those products and you choose not to avail yourself of them, then we will have no liability for any transaction that occurs on your account that those products were designed to discover or prevent, nor will we have any duty to re-credit your account for any such losses.

(R. 1-1, Agreement, Page ID # 35.) McNeil opened the account at a computer repair shop with assistance from a representative of Defendant. At the time McNeil opened the account, he was not given a signed copy of the Agreement, nor was he advised of the details contained in the Agreement, including the nature of the fraud prevention services offered by Defendant. After opening the account, McNeil ordered hologram checks from a third party as a protective measure to avoid fraudulent activity on Plaintiff's account.

On November 24, 2014, McNeil noticed four unauthorized checks that had been debited from Plaintiff's account totaling $3,973.96.[1]  The unauthorized checks did not contain the hologram that McNeil ordered for Plaintiff's business account checks, and the check numbers on the fraudulent checks were duplicative of checks that Plaintiff had already written and that Defendant had properly paid.  Within 24 hours of discovering the fraud, McNeil contacted Defendant to request reimbursement for the fraudulent checks debited from Plaintiff's account.  Defendant responded in a letter stating that "reasonable care was not used in declining to use our Check Positive Pay/Reverse Positive Pay services, which substantially contributed to the making of the forged item(s)," and that "[a]s a result, we will not reimburse you for these unauthorized/forged item(s)."  (R. 1-4, First Huntington Letter, Page ID # 46.)

Plaintiff then hired an attorney who sent another letter to Defendant and submitted complaints to the Federal Reserve and the Federal Deposit Insurance Corporation ("FDIC") in December 2014 and February 2015.  As a result of the complaints, the Office of the Comptroller of the Currency ("OCC") was contacted, and the OCC contacted Defendant regarding the allegations in the complaints.  On March 17, 2015, Defendant sent a second letter to Plaintiff, reiterating that Defendant "will have no liability for any transaction that occurs on [Plaintiff's] account" due to the fact that Plaintiff did not avail itself of the products and services designed to discover or prevent the type of fraudulent activity that occurred on Plaintiff's account.  (R. 1-7, Second Huntington Letter, Page ID # 54.)  On April 15, 2015, the OCC sent a letter to Plaintiff stating that it would not intervene in a private party dispute where the dispute involves the interpretation and enforcement of a contract.

**B.  Procedural History**

On November 20, 2015, Plaintiff filed a putative class action complaint in district court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), alleging that Defendant:  (1) breached its obligations under U.C.C. § 4-401, codified at O.R.C. § 1304.30(A), when it made unauthorized payments from four fraudulent checks that were not properly payable; and (2) unreasonably shifted all liability to Plaintiff and improperly disclaimed its

---

[1]Plaintiff's counsel stated at oral argument that the perpetrator personally took the four unauthorized checks to a teller window at one of Defendant's branches and the teller immediately cashed the checks.

responsibility to act in good faith and exercise ordinary care by incorporating such terms and standards into the Agreement, in violation of U.C.C. § 4-103(a), codified at O.R.C. § 1304.03(A). On January 19, 2016, Defendant moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 19, 2016, Plaintiff responded, and on March 7, 2016, Defendant replied to Plaintiff's response.

On November 3, 2016, the district court granted Defendant's motion to dismiss. The district court held that Defendant is not liable for the loss associated with the cashing of the unauthorized checks on Plaintiff's account because the Agreement does not violate § 1304.03(A) or § 1304.30(A). The district court concluded that the Agreement is not manifestly unreasonable and does not absolve Defendant of its duties to act in good faith and exercise ordinary care because several provisions in the Agreement "plainly reaffirm [Defendant's] duties to act in good faith and exercise ordinary care." (R. 19, District Court's Order, Page ID # 162.) The district court thus found that the terms and conditions of the Agreement which shifted liability to Plaintiff for any fraudulent activity occurring on its account did not violate § 1304.03(A) or § 1304.30(A), and pursuant to the Agreement, Defendant was not liable for Plaintiff's loss. On November 23, 2016, Plaintiff timely appealed.

## DISCUSSION

### A. Standard of Review

We review *de novo* the district court's dismissal of Plaintiff's complaint for failure to state a claim. *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). We must accept the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). We may affirm the district court's dismissal of the plaintiff's claims on any grounds present in the record, including grounds not relied upon by the district court. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548−49 (6th Cir. 1999).

To survive a motion to dismiss, the plaintiff must allege facts that if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B.  Analysis

Plaintiff argues that Defendant violated § 1304.03(A) by disclaiming all responsibility through its Agreement. Section 1304.03(A) provides that parties may vary the default provisions of the Ohio Revised Code by agreement only if that agreement does not disclaim a bank's responsibility to act in good faith and exercise ordinary care. Plaintiff further argues that Defendant violated § 1304.30(A) by charging Plaintiff for four unauthorized checks. Section 1304.30(A) provides that a bank may charge a customer's account for an item that is properly payable from that account. Conversely, Defendant argues that it is not liable for the fraud on Plaintiff's account because the Agreement does not disclaim Defendant's duties to act in good faith and exercise ordinary care.

The record indicates that the provision at issue in the Agreement might improperly disclaim Defendant's basic responsibility to act in good faith and exercise ordinary care. We find that the complaint sufficiently states a claim to survive Defendant's motion to dismiss.

### 1.  Relevant Legal Principles

Chapter 1304 of the Ohio Revised Code, Ohio's version of the Uniform Commercial Code, governs the relationship between banks and depositors. The default rule states that "[a] bank may charge against the account of a customer an item that is properly payable from that account." O.R.C. § 1304.30(A). "An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." O.R.C. § 1304.30(A). "An item containing a forged drawer's signature or forged indorsement is not properly payable." U.C.C. § 4-401, cmt. 1. The default rule, however, may be varied by the parties pursuant to an agreement.

Section 1304.03(A) explains that "[t]he effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for

its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." Notwithstanding, "the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable." O.R.C. § 1304.03(A). In other words, "regardless of the terms and conditions of the parties' contractual relationship . . . Huntington cannot remove by contract its statutory duty to act in good faith and to exercise ordinary care toward its depositors." *Alotech, Ltd. v. Huntington Nat'l Bank*, No. 1:13-cv-01971, 2014 WL 281973, at *4 (N.D. Ohio Jan. 14, 2014). Thus, if a bank attempts to contract out of their duty of ordinary care, then such an attempt would be considered manifestly unreasonable.

### 2. Sufficiency of Plaintiff's Allegations

The provision at issue, which is buried towards the end of the Agreement, refers to nondescript products Defendant has available in order to reduce the risk of fraud on a customer's account. The provision goes on to completely absolve Defendant of all liability for any fraudulent transaction that occurs on the customer's account that the anti-fraud products "were designed to discover or prevent" so long as the customer's account is eligible for such products and the customer voluntarily chose not to enroll in the products. (R. 1-1, Agreement, Page ID # 35.) The contested provision does not specify the types of products offered, what type of fraud would be prevented and/or discovered, how an account becomes eligible, whether the customer's account is eligible, or how much the products would cost the customer. Plaintiff argues that Defendant violated § 1304.03(A) by attempting to absolve itself of its duties to exercise ordinary care and act in good faith by inserting the contested provision into the Agreement.

The district court dismissed Plaintiff's contention on the basis that other provisions in the Agreement "plainly reaffirm [Defendant's] duties to act in good faith and exercise ordinary care." *Majestic Building Maintenance, Inc. v. Huntington Bancshares, Inc.*, No. 2:15-cv-3023, 2016 WL 6525387, at *3 (S.D. Ohio Nov. 3, 2016). For instance, the district court noted that the Agreement's "Limitation of Liability" section provides that Defendant "will use ordinary care in performing such Services and with processing Transactions," and that Defendant's "liability relating to any Service or Transaction shall be limited to actual proven damages sustained by Company arising directly from Bank's own gross negligence or willful misconduct." (R. 1-1 at

19.)   The district court thus concluded that because other provisions in the Agreement purportedly acknowledge Defendant's duties of ordinary care and good faith, the provision at issue does not run afoul of § 1304.03(A).

We find that the district court erroneously and prematurely dismissed Plaintiff's putative class action complaint.  First and foremost, Plaintiff properly alleged that the provision at issue violates § 1304.03(A) because it unreasonably disclaims Defendant's basic duties of ordinary care and good faith.  In order to survive Defendant's motion to dismiss, Plaintiff must allege that the standards regulating Defendant's responsibility to monitor Plaintiff's account for fraudulent activity were manifestly unreasonable.  *See* O.R.C. § 1304.03(A).  The standards regulating such conduct are discussed in the contested provision of the Agreement.  (*See* R. 1-1, Agreement, Page ID # 35.)  Plaintiff states a plausible claim that such standards are unreasonable; Plaintiff contends that the contested provision essentially allows Defendant to proclaim that it is not responsible for any unauthorized transaction that occurs on Plaintiff's account.

Defendant does not appear to dispute that it charges the customer additional fees for these extra anti-fraud protection services.  Despite charging these extra fees, Defendant does not indicate in the Agreement that these anti-fraud products cost extra, what the costs of these products would be to the customer, and how the costs are calculated (i.e., whether the costs are different for each customer depending on the type of account, etc.).  Left unanswered by the record below is whether, by charging the customer additional fees for these anti-fraud protection services, Defendant is effectively charging the customer for something it should arguably do at no additional cost—which is to exercise its ordinary duty of care.[2]

Defendant argues that it "limited its liability only for those unauthorized transactions that the anti-fraud products were designed to detect and prevent, and only if the customer failed to

---

[2]Defendant contends that the district court did not err in granting the motion to dismiss because Plaintiff did not allege anything about the cost of implementing the anti-fraud products, thus we should not consider the issue of Defendant's lack of disclosure about the cost of these products.  Defendant's counsel admitted at oral argument that these products do cost extra and that the customer incurs those extra costs.  However, Defendant's counsel did not know how much Plaintiff would have to pay if it were to avail itself of these anti-fraud products.  Notwithstanding, the fact that this allegation was not expressly mentioned in the complaint constitutes an additional reason why the district court prematurely dismissed the complaint without giving Plaintiff an opportunity to amend or pursue discovery.

avail itself of those products." (Def.'s Appellate Br. 18.)  This contention is unpersuasive at this stage of the litigation given the practical effect of the provision.  The provision, as mentioned above, exculpates Defendant from liability for all fraudulent transactions that occur on a customer's account as long as: (1) the customer's account was eligible for the anti-fraud products and the customer did not sign up for them; and (2) the transaction is one which the anti-fraud products "were designed to discover or prevent."  (R. 1-1 at 35.)

Nowhere in the Agreement are the details of the anti-fraud products mentioned, nor is there any information on how or who determines what transactions would arguably have been detected.  Given the bank customer's lack of information about the anti-fraud products, such a one-sided determination could be incredibly arbitrary.  Defendant could argue that every fraudulent transaction would have been discovered or prevented by the anti-fraud products even though there is no procedure for a customer, like Plaintiff, to be involved in or contest that determination.  Based on the record before us, we find that Plaintiff states a plausible claim that it was unreasonable for Defendant to absolve itself from liability for any fraudulent transaction that occurs on a customer's account when the anti-fraud products cost extra, the nature of the anti-fraud products is not revealed, and when the determination of what unauthorized transactions would have been discovered or prevented is left unexplained.

It is important to note that we are not making a determination on the merits of whether the contested provision is "manifestly unreasonable."  *See* O.R.C. § 1304.03(A).  The district court dismissed the complaint on a motion to dismiss without giving Plaintiff the opportunity to amend its complaint or an opportunity for the parties to conduct any significant discovery.  The primary cases that both parties cite in their briefs are cases in which the district courts ruled on motions for summary judgment, after having given the parties a chance to conduct proper discovery. *See Cumis Ins. Society v. Girard*, 522 F. Supp. 414 (E.D. Pa. 1981) (holding that the agreement between the bank and the commercial customer relating to forged checks and the bank's limited liability contained conflicting interpretations which indicated that the bank failed to establish immunity from liability under Pennsylvania law); *see also Cincinnati Ins. Co. v. Wachovia Bank, Nat'l Ass'n*, No. 08-cv-2734, 2010 WL 2777478 (D. Minn. July 14, 2010) (holding that agreement which transferred liability to customer for failure to implement bank's

fraud detection program was not manifestly unreasonable under Pennsylvania law because it was undisputed that program would have discovered fraud and customer did not argue that fraud would have occurred even if bank had exercised basic duty of ordinary care). These cases are thus not helpful to us at this stage in the proceedings since these decisions are based on facts not developed in this case, the courts interpreted Pennsylvania law rather than Ohio law, and the parties had the benefit of discovery whereas the parties in this case have not had the opportunity to conduct significant discovery.

Secondly, the district court's brief analysis of the other provisions in the Agreement was unnecessary. Plaintiff's dispute was not with the other provisions in the Agreement that the district court discussed in its opinion. The complaint specifically challenged the provision related to Defendant's fraud prevention services and that provision's absolute disclaimer of liability. The district court dismissed the complaint primarily because other unrelated provisions of the Agreement "plainly reaffirm[ed]" Defendant's duties to exercise ordinary care and act in good faith. It is irrelevant whether other parts of the agreement "plainly reaffirm" Defendant's basic duties; and by so holding, the district court failed to review and properly analyze the provision being challenged. Again, Plaintiff states a plausible claim that it is unreasonable for the provision at issue to disclaim Defendant's basic duties if the customer does not enroll in and pay extra for the unspecified fraud prevention services.

Third, some of the district court's findings are not supported by the record. The district court held that Plaintiff's complaint fails to survive Defendant's motion to dismiss because the complaint did not "contain specific allegations that the terms and conditions by which [Defendant] provided fraud prevention services were manifestly unreasonable." *Majestic Building Maintenance Inc.*, 2016 WL 6525387, at *4. The district court stated that "[t]he complaint does not allege that [Defendant] breached its duties in processing the four forged checks." *Id*. at *4. This holding is erroneous.

Under the allegations pertaining to Count I, paragraph 99 of the complaint alleges that Defendant "breached its obligation to Plaintiff under the UCC when it made unauthorized payments and charged $3,973.96 against Plaintiff's account upon a fraudulent presentment of the altered checks." (R. 1, Compl., ¶ 99, Page ID # 15.) The complaint identifies the bases for

Defendant's breach by specifically alleging that the four unauthorized checks "were obviously altered, out of sequence, and did not match Plaintiff's typical checks." (*Id.*)  Contrary to what the district court found, we find that the language in the complaint expressly alleges that Defendant breached its duties to Plaintiff when it credited the four forged checks against Plaintiff's account.

Further, the district court misstated the record when it found that the complaint does not "contain specific allegations that the terms and conditions by which [Defendant] provided fraud prevention services were manifestly unreasonable."  2016 WL 6525387, at *4.  Given that Plaintiff's main contention is with the terms and conditions by which Defendant notified customers of its fraud prevention services, this finding by the district court was erroneous.

Moreover, the district court could not have expected Plaintiff to provide too much detail about the fraud prevention services given that the case was dismissed prior to discovery being completed and without an opportunity for Plaintiff to amend the complaint.  In fact, we are still unaware of the specifics pertaining to Defendant's fraud prevention services, how much these services would cost, and whether Plaintiff's account was eligible for such services.  The district court contended that Plaintiff does not dispute that its account was eligible for the fraud prevention service "Check Positive Pay" and that this fraud prevention service "was designed to discover or prevent the type of loss suffered by" Plaintiff.  *Id*. at *4.  Nevertheless, we were unable to find in the record where Plaintiff admits that its account was eligible for this fraud prevention service and that Defendant's Check Positive Pay service would have caught the fraud on Plaintiff's account.

Nowhere in Plaintiff's complaint or response to Defendant's motion to dismiss is it clearly indicated that these facts are undisputed.  We do note a statement in Plaintiff's brief on appeal that could arguably indicate that Defendant's Check Positive Pay service would have caught the fraud.  In its brief, Plaintiff stated that "[a]ny exercise of ordinary care by Huntington would have caught these forgeries." (Pl.'s Appellate Br. 16.)  This statement is not definitive for two reasons.  First, this statement was made *after* the district court issued its order, so it was not in the record when the district court made its finding that this fact was undisputed.  More importantly, Plaintiff's response to the motion to dismiss expressly states that "there is no way to

know whether [Plaintiff's] account was in fact 'eligible' because that term is not defined in the Agreement, nor is there any reference to any other section or document elaborating on what 'eligible' means." (R. 10, Pl.'s Resp. to Mot. to Dismiss, Page ID # 103.)  At oral argument, Plaintiff's counsel asserted that Plaintiff had never admitted these facts to be undisputed.

**CONCLUSION**

In conclusion, we find that Plaintiff has alleged facts that, if accepted as true, would be sufficient to state a claim to relief that is plausible on its face.  Plaintiff's contention is quite simple:  the provision at issue improperly disclaims Defendant's duties to act in good faith and exercise ordinary care.  We find that Plaintiff states a plausible claim that the provision unreasonably disclaims all liability under the circumstances of this case.  Because the U.C.C., and by implication the O.R.C., expressly forbids a bank from disclaiming all of its liability to exercise ordinary care and good faith, Plaintiff's complaint survives Defendant's motion to dismiss.  Therefore, we hold that the district court erred in dismissing Plaintiff's complaint.

For the foregoing reasons, we **REVERSE** the district court's order of dismissal and **REMAND** with instructions to allow Plaintiff an opportunity to amend the complaint and conduct discovery.