NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0455n.06

Case No. 24-3097

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>KIMBERLY POTTER,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>DEBRA GORRELL WEHRLE; AUBREY COOK; OHIO ATTORNEY GENERAL'S OFFICE,<br><br>    Defendants-Appellees.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br><br>O P I N I O N</td></tr>
</table>

FILED
Nov 18, 2024
KELLY L. STEPHENS, Clerk

BEFORE:  COLE, MATHIS, and BLOOMEKATZ, Circuit Judges.

COLE, Circuit Judge.  After a state trial court dismissed criminal charges against Kimberly Potter, she filed a complaint in federal court against the Ohio Attorney General, Debra Wehrle, and other state actors alleging malicious prosecution.  Defendants filed a motion to dismiss the complaint.  The district court denied the motion and granted leave for Potter to amend her complaint.  Following the filing of the amended complaint, defendants again moved to dismiss the case.  Potter thereupon sought leave to file a second amended complaint.  The district court denied the request for leave to amend the complaint and granted defendants' motion to dismiss the amended complaint.  Potter appeals the district court's order granting the motion to dismiss.  We affirm.

I.

Potter was a certified nurse practitioner who provided nursing care for patients at the Whetstone Gardens and Care Center, a long-term care facility in central Ohio. In 2017, the Ohio Attorney General began investigating allegedly inadequate treatment of patients at Whetstone. The Ohio Attorney General claimed that staff had falsified medical treatment documentation and forged signatures of nursing staff, and that neglect by several employees—including Potter—resulted in the death of one patient.

As a result of the investigation, a grand jury indicted Potter on three charges: involuntary manslaughter, gross patient neglect, and patient neglect. After the trial court dismissed some counts against Potter, the indictment was superseded twice, and the case proceeded to trial. After the state's case in chief, the trial court granted Potter's motion for judgment of acquittal.

Potter thereafter filed a malicious prosecution claim against the Ohio Attorney General and two of his employees—special agent Aubrey Cook and prosecutor Debra Gorrell Wehrle. Potter alleged that the state's investigation of her was flawed and maliciously motivated for several reasons.

Potter's suit centers on Wehrle's role, as the assistant prosecutor assigned to Potter's criminal case, during the investigatory stage of Potter's prosecution. Potter alleges that Wehrle "inappropriately": (i) inserted herself into the investigation, (ii) met with witnesses, and (iii) directed the interview and investigation process. According to Potter, the Attorney General and Cook developed a timeline from staffing logs which the Attorney General knew to be falsified and inaccurate. And from this timeline, Wehrle allegedly coached several Whetstone staff witnesses about the sequence of events and encouraged them to testify consistent with the false timeline. The Attorney General and Cook also allegedly misrepresented witness statements in their

investigative reports. Then, Wehrle and the Attorney General apparently encouraged their medical expert to rely on those reports.

As a result of defendants' conduct, Potter alleged she suffered economic damage, reduced future professional employment opportunities, severe humiliation and embarrassment, and extreme and ongoing emotional distress. She also allegedly experienced a deprivation of liberty because she agreed to a recognizance bond in each case, was restricted from contacting victims and witnesses, and was prohibited from being within 500 feet of the Whetstone Gardens and Care Center for the three years her prosecution lasted. The 500-foot barrier prevented Potter from seeking employment at Riverside Hospital because it was within the designated zone and made travel for Potter more difficult because a major highway through Columbus runs within 500 feet of Whetstone.

Defendants moved to dismiss Potter's amended complaint, arguing that Potter's claims against state officials in their official capacity were barred by sovereign immunity and that Potter's claims against the individual defendants failed to state a claim. In addition to opposing the motion to dismiss, Potter sought leave to amend her complaint a second time. She also moved voluntarily to drop Cook as a defendant.

The district court granted Potter's motion to drop Cook and defendants' motion to dismiss but denied Potter's motion for leave to amend as futile. When dismissing Potter's claim against Wehrle, the district court reasoned that Wehrle was entitled to prosecutorial immunity for all allegedly wrongful actions that could support the malicious prosecution claim. It further reasoned that Potter did not allege Wehrle coached witnesses to lie during interviews or knowingly passed on false information. Because Potter had not alleged that Wehrle relied on or promoted false evidence during the preliminary investigation, her claim was barred by prosecutorial immunity.

Potter now appeals the district court's decision dismissing her malicious prosecution claim against Wehrle. She argues the district court erred by granting defendants' motion to dismiss and denying her leave to file a second amended complaint. Wehrle contends that the district court correctly dismissed Potter's malicious prosecution claim.

## II.

We review de novo a district court's rulings on a motion to dismiss. *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, 864 F.3d 455, 458 (6th Cir. 2017). Similarly, we review de novo a denial of a motion for leave to amend the complaint where the district court finds that amendment would be futile. *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 673–74 (6th Cir. 2018). When reviewing the district court's decision dismissing a complaint, we accept the plaintiff's well-pleaded factual allegations as true and construe them in a light most favorable to the plaintiff. *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

We review denials of absolute immunity de novo. *Rieves v. Town of Smyrna*, 959 F.3d 678, 690 (6th Cir. 2020) (internal citations omitted).

To plead a claim for malicious prosecution, a plaintiff must plausibly allege that (1) the defendant "made, influenced, or participated in the decision to prosecute" the plaintiff; (2) the prosecution lacked probable cause; (3) the plaintiff suffered a "deprivation of liberty" because of the prosecution; and (4) the proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (cleaned up).

The district court dismissed Potter's claim under the first element. Wehrle argues that, even if Potter plausibly alleged that she "made, influenced, or participated in the decision to prosecute," this court should affirm the district court's dismissal because Potter fails to plausibly allege a deprivation of liberty. Because we affirm the district court's decision to dismiss as to the first element, we do not address whether Potter plausibly alleged a deprivation of liberty.

III.

An issue central to this appeal is separating Wehrle's investigatory acts from her prosecutorial acts because the latter are entitled to absolute immunity. We apply a "functional approach" to assess whether a government official is entitled to absolute immunity. *Rieves*, 959 F.3d at 690 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The functional approach requires us to consider "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The official seeking absolute immunity has the burden to show it is justified for the function in question. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

One such form of absolute immunity is prosecutorial immunity. "A prosecutor is entitled to absolute immunity when he acts as an advocate for the State and engages in activity that is intimately associated with the judicial phase of the criminal process." *Rieves*, 959 F.3d at 691 (cleaned up) (quoting *Prince*, 198 F.3d at 611). As examples, the Supreme Court has held that initiating a prosecution, arguing the state's case, and presenting evidence in support of a motion for a search warrant are actions entitled to prosecutorial immunity. *Burns*, 500 U.S. at 490–91; *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

Prosecutorial immunity does not, however, extend to a prosecutor's "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for

judicial proceedings." *Buckley*, 509 U.S. at 273. For example, absolute immunity does not protect a prosecutor where they engage in "investigative functions normally performed by a detective or police officer." *Id.* Additionally, "the fact that a prosecutor 'later call[s] a grand jury to consider the evidence [that his alleged misconduct uncovered] does not retroactively transform that work from the administrative into the prosecutorial.'" *Rieves*, 959 F.3d at 691 (quoting *Buckley*, 509 U.S. at 275–76). We are "quite sparing" when extending absolute immunity to prosecutors. *Id.* at 694 (quoting *Buckley*, 509 U.S. at 269). Some acts, "such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection." *Cunningham v. Dep't of Child.'s Servs.*, 842 F. App'x 959, 966 (6th Cir. 2021) (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997)).

Whether a state actor influenced or participated in a prosecution "hinges on the degree of the[ir] involvement and the nature of the[ir] actions." *See Sykes*, 625 F.3d at 311 n.9 (citing *Malley v. Briggs*, 475 U.S. 335, 344–45 n.7 (1986)). It is a fact determination based on the totality of the circumstances. *Id.*

We must, therefore, consider Wehrle's actions during the state of Ohio's preliminary investigation of Potter and disregard Wehrle's prosecutorial actions. In other words, the functional approach requires us to disregard that Wehrle, as an assistant prosecutor, ultimately prosecuted Potter and presented evidence to the grand jury, because those acts are entitled to absolute prosecutorial immunity. We focus, then, on the well-pled allegations of the amended complaint regarding Wehrle's actions during the preliminary investigation to determine whether she influenced the decision to prosecute.

The amended complaint and proposed second amended complaint do not allege sufficient facts relating to Wehrle's conduct during the preliminary investigation for relief to be granted to

Potter. Indeed, Potter's amended complaint and second amended complaint do not support her theory of the case on appeal. Although Potter argues in her briefing that Wehrle helped develop the allegedly unsupported timeline, knew the information was falsified and inaccurate, and that such conduct occurred over a year prior to convening the first grand jury, she does not raise those allegations in her amended complaint. The amended complaint—and proposed second amended complaint—allege that Cook and the Attorney General developed the timeline and investigative reports, not Wehrle. And the amended complaint does not allege that Wehrle knew this information was falsified or inaccurate; Potter's complaint merely alleges that the Attorney General and Cook did. Merely filing "allegedly misleading" investigative materials "is insufficient to support a malicious-prosecution claim." *See Richards v. County of Washtenaw*, 818 F. App'x 487, 493–94 (6th Cir. 2020).

Disregarding the arguments of counsel which are unsupported by the allegations in the complaint, we are left with allegations that Wehrle inserted herself into the investigation and supervised it, ultimately making the decision to seek an indictment against Potter. These allegations do not establish that Wehrle influenced the prosecution without probable cause during the preliminary investigation.

Potter argues that her case is nearly identical to this court's precedent in *Rieves*, 959 F.3d at 691–92, where the court found that prosecutors were not entitled to absolute immunity. In that case, two prosecutors unreasonably directed the investigation of the plaintiff without probable cause by supporting law enforcement in raiding stores that were selling products with cannabidiol ("CBD"). *Id.* at 692. There, the plaintiffs alleged specific instances where the prosecutors supported law enforcement in raiding stores, intervened in the investigation, recommended police officers padlock businesses selling illegal products and execute undercover buys, told certain

detectives to get more involved, and advised on the legality of the seized products throughout the investigation. *Id.* at 686–87. As this court explained, "both [prosecutors] were at least partly responsible for effectuating the arrests of the plaintiffs and the raids of their stores." *Id.* at 692. Thus, absolute immunity did not shield those prosecutors from liability.

Potter does not allege Wehrle engaged in the kinds of police-like investigative acts described in *Rieves*. The complaint in *Rieves* contained "very specific factual allegations" that the prosecutors "acted outside their role as judicial advocates during the investigative phase . . . and were objectively unreasonable in pushing the operation forward without probable cause." *See id.* at 690. Although Potter alleges that Wehrle inserted herself into the investigation and improperly coached witnesses, interviewing witnesses and preparing them to testify are prosecutorial actions protected by absolute immunity. *See Cunningham*, 842 F. App'x at 966. And, as discussed above, though Potter's briefing argues that Wehrle developed a timeline based on information Wehrle knew was false, these allegations are not included in the amended complaint or the proposed second amended complaint. Potter's allegations regarding Wehrle's role in the investigation fall short.

In short, Potter's amended complaint fails to allege facts that plausibly show that Wehrle had any sort of improper influence on the preliminary investigation. And because Potter's proposed second amended complaint did not add any additional facts to cure that fatal defect in her amended complaint, the district court correctly denied her motion for leave to amend as well.

IV.

For these reasons, we affirm the district court's order dismissing Potter's amended complaint and denying her leave to file a second amended complaint.